**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:14-cv-01600-MEH

LET'S GO AERO, INC., a Colorado corporation

      Plaintiff

v.

CEQUENT PERFORMANCE PRODUCTS, INC.,
f/k/a CEQUENT TOWING PRODUCTS, INC.,
a Delaware corporation, and
U-HAUL INTERNATIONAL, INC., a Nevada corporation.,

      Defendants

---

## AMENDED COMPLAINT

---

      Plaintiff Let's Go Aero, Inc., a Colorado corporation ("LGA"), as and for its Amended Complaint against Cequent Performance Products, Inc., a Delaware corporation ("Cequent") and U-Haul International, Inc., a Nevada corporation ("U-Haul"), as a matter of course within 21 days after service of its original pleading, alleges and states as follows:

## I.    NATURE OF THE ACTION

      1.    The gravamen of LGA's claims against Cequent and U-Haul is Cequent's and U-Haul's usurpation of LGA's intellectual property and related rights, pattern of false designation of origin and mismarking of LGA's products by Defendants in representing them to the public as their own, and the unjust enrichment flowing therefrom, following the termination of a license agreement on January 28, 2012 between LGA and Cequent. Since that time, Cequent has and continues to misappropriate and infringe upon LGA's inventions, patents, trademarks, and copyrights for its own use and benefit with the active cooperation of U-Haul and possibly others,

in contravention of LGA's rights. In doing so, Defendants have committed at least two acts of racketeering activity within the meaning of 18 U.S.C. § 1961(1), which, as more fully set forth below, constitute a pattern of racketeering activity as set forth in 18 U.S.C. § 1961(5).

## II.   PARTIES

2.      Plaintiff LGA is a Colorado corporation with its principal place of business in Colorado Springs, Colorado.

3.      Defendant Cequent is a Delaware corporation with its principal place of business at 4774 Anchor Court West, Plymouth, Michigan. Cequent was formerly known as Cequent Towing Products, Inc..

4.      Defendant U-Haul International, Inc. is a Nevada corporation with its principal place of business at 2727 N. Central Ave., Phoenix, Arizona 85004.

## III.   JURISDICTION AND VENUE

5.      This Court has jurisdiction over the subject matter and parties to this action pursuant to 28 U.S.C. § 1332 and because the parties are diverse and the amount in controversy exceeds $75,000 exclusive of interest and costs. This Court also has jurisdiction to render declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202 as well as jurisdiction over the claims contained herein for patent infringement, copyright infringement, trademark infringement and racketeering activity pursuant to the laws of the United States, pursuant to 35 U.S.C. §§ 101 *et seq*., specifically 35 U.S.C. §§ 271, 281 to 287, 17 U.S.C. §§ 101, *et seq.*, 15 U.S.C. §§ 1125(a) and (c), and 18 U.S.C. §§ 1961 *et seq.* This Court also has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338. Supplemental jurisdiction over LGA's state law

claims exists pursuant to 28 U.S.C. § 1367 because they are so related to the other claims that together all of the claims form the same case or controversy.

6.      This Court has personal jurisdiction over Cequent and U-Haul, which regularly have and continue to do business in Colorado pursuant to C.R.S. § 13-1-124.

7.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

## IV.    FACTUAL ALLEGATIONS

<u>LGA Inventions and Patents</u>

8.      LGA is the sole assignee and beneficial owner of various inventions created by its founder and president, Marty L. Williams. Design details, trade secrets and confidential information were provided to Cequent pursuant to the License Agreement dated January 2, 2008, and as amended, which incorporated the Parties' previous Nondisclosure Agreement (collectively, "License Agreement").

9.      The inventions so disclosed and licensed by LGA to Cequent consisted of the following:

| LICENSED PRODUCT | PRIORITY DATE | DATE OF FILING | DATE OF PATENT GRANT | PATENT NO./ APPLICATION NO. |
|---|---|---|---|---|
| Silent Hitch Pin/SHP | Sept. 25, 2000; Sept. 25, 2000; August 25, 2003; May 11, 2006 | Nov. 3, 2000; Sept. 25, 2000; August 25, 2003; May 11, 2006 | June 25, 2002; August 26, 2003; Sept. 20, 2005; Dec. 20, 2011 | 6,409,203; 6,609,725; 6,945,550; 8,079,613 Trademark Registered Inclusive with: GearCage, TwinTube, GearSpace, JuiceBox, GearDeck and other products unknown. |
| Pixie a/k/a "SportWing" | April 5, 2007; April 5, 2007; April 5, 2007; | Dec.14, 2012; April 5, 2007; May 13, 2013; | June 25, 2013; n/a; n/a; | D684,917; 11/697,294; 29/454,713; |

| LICENSED PRODUCT | PRIORITY DATE | DATE OF FILING | DATE OF PATENT GRANT | PATENT NO./ APPLICATION NO. |
|---|---|---|---|---|
| | April 5, 2007; April 5, 2007 | June 27, 2013; June 27, 2013 | n/a; n/a | 29/459,230; 29/459,234 |
| GearCage, GearCage Twin Tube, GearCage TT, GearCage Mover, GearCage Transporter | June 19, 1998; Oct. 15, 2004; Oct. 15, 2006; June 22, 2007; May 16, 2008 | Feb. 16, 2001; Oct. 15, 2004; Oct. 15, 2006; June 22, 2007; May 16, 2008 | June 28, 2005; Dec. 20, 2011; May 15, 2012; n/a; n/a | 6,910,609; 8,079,491; 8,177,258; 11/767,166; 12/122,546 Trademark Registered |
| TwinTube, TT, TT-UBI, TwinTube-UBI | Sept. 25, 2000; Sept. 25, 2000; June 19, 1998; August 25, 2003; Feb. 20, 2002; May 11, 2006 | Nov. 3, 2000; Sept. 25, 2000; Feb. 16, 2001; August 25, 2003; Feb. 20, 2002; May 11, 2006 | June 25, 2002; August 26, 2003; June 28, 2005; Sept. 20, 2005; n/a; n/a | 6,409,203; 6,609,725; 6,910,609; 6,945,550; 09/683,820; 11/382,917 Trademark Registered Inclusive with: GearCage, GearSpace, GearDeck, and other products unknown |
| GearSpace, GearSpace 34 | Sept. 25, 2000; Sept. 25, 2000; June 19, 1998; August 25, 2003; Feb. 20, 2002; May 12, 2006 | Nov. 3, 2000; Sept. 25, 2000; Feb. 16, 2001; August 25, 2003; Feb. 20, 2002; May 12, 2006 | June 25, 2002; August 26, 2003; June 28, 2005; Sept. 20. 2005; n/a; n/a | 6,409,203; 6,609,725; 6,910,609; 6,945,550; 09/683,820; 11/382,917 Trademark Registered |
| GearDeck, GearDeck 17 | Sept. 25, 2000; Sept. 25, 2000; June 19, 1998; August 25, 2003; Feb. 20, 2002; June 8, 2005; May 12, 2006 | Nov. 3, 2000; Sept. 25, 2000; Feb. 16, 2001; August 25, 2003; Feb. 20, 2002; June 8, 2005; May 12, 2006 | June 25, 2002; August 26, 2003; June 28, 2005; Sept. 20, 2005; n/a; n/a; n/a | 6,409,203; 6,609,725; 6,910,609; 6,945,550; 09/683,820; 11/160,087; 11/382,917 Trademark Registered |
| LandingGear | June 19, 1998; June 8, 2005 | Feb. 16, 2001; June 8, 2005 | June 28, 2005; n/a | 6,910,609; 11/160,087 Trademarked |

| LICENSED PRODUCT | PRIORITY DATE | DATE OF FILING | DATE OF PATENT GRANT | PATENT NO./ APPLICATION NO. |
|---|---|---|---|---|
| | | | | Inclusive with: TwinTube, GearCage, GearDeck, GearSpace, JuiceBox and other products unknown |
| GearBag, GearCage GearBag | n/a | n/a | n/a | Trademark Registered Inclusive with: GearCage and other products unknown |
| JuiceBox | Sept. 25, 2000; Sept. 25, 2000; June 19, 1998; August 25, 2003; Feb. 20, 2002; June 8, 2005; May 12, 2006 | June 3, 2000; Sept. 25, 2000; Feb. 16, 2001; August 25, 2003; Feb. 20, 2002; June 8, 2005; May 12, 2006 | June 25, 2002; August 26, 2003; June 28, 2005; Sept. 20, 2005; n/a; n/a; n/a | 6,409,203; 6,609,725; 6,910,609; 6,945,550; 09/683,820; 11/160,087; 11/382,917 Trademarked |

10.     The License Agreement was terminated by the voluntary agreement of LGA and Cequent effective January 28, 2012.

11.     On information and belief, from and after the termination of the License Agreement, Cequent continued and continues to manufacture, distribute, sell, license and obtain financial benefit from the following without the agreement or consent of LGA:

a.      Pixie Bicycle Racks ("Pixie/Sport Wing");

b.      Silent Hitch Pins/SHP ("Silent Hitch Pin"); and

c.      GearCage Basket ("GearCage")

(collectively, the "LGA Inventions").

12.     On information and belief, from and after the termination of the License Agreement, Cequent has been and is now selling and licensing products based upon and identical to the LGA Inventions through various wholesale and retail outlets including but not limited to

U-Haul, Walmart, Target, Hitch Corner of Denver, Colorado, Amazon and REI, all of whom have retail outlets selling LGA Inventions to customers in Colorado and elsewhere.

13.     From and after the termination of the License Agreement, Cequent has and continues to promote a scheme or artifice to defraud LGA by obtaining money or property by means of false or fraudulent representations, pretenses, or promises, through the use of mail and/or wire communications through interstate commerce to further that scheme, causing injuries and damages to LGA.

14.     From and after the termination of the License Agreement, Cequent has conspired to violate 18 U.S.C. §§ 1961, *et seq*. by agreeing with others to defraud LGA and the consuming public.  Cequent and others, including but not limited to U-Haul, have agreed to violate LGA's rights by selling, manufacturing, licensing and distributing previously licensed LGA Inventions, and claiming ownership and invention thereof, and mismarking LGA's products as their own. Cequent and U-Haul have misrepresented facts, both past and present, knew those facts were false, and acted with the intention of injuring LGA.

15.     Additionally, from and after the termination of the License Agreement, Cequent and U-Haul have violated and conspired to violate 18 U.S.C. § 2319 on more than two occasions between 2012 and 2014, and committed the overt acts described herein.

<u>The Pixie/SportWing Bicycle Rack</u>

16.     On June 25, 2013, United States Letters Patent No. D684,917 was issued to LGA for the Pixie/SportWing Bicycle Rack.

17.     On or about July 1, 2010, July 13, 2010, and December 15, 2010, while the License Agreement, which recognized LGA's Inventions, was in force, David Cupar, Esq.; Paul

Caruso, Cequent's Vice President of Business Development; Jason Matthew Dreger of Livonia, Michigan; Gail Rae Matheus of Salem, Michigan; Mitchell Auerbach of Ft. Wayne, Indiana; Maurice R. Fredricks of Grand Heaven, Michigan; Todd Ireland of Coopersville, Michigan; Brett Koostra of Grand Haven, Michigan; and Sean Phillips of Huntsville, Canada (collectively, "Applicants"), filed or caused to be filed applications for international and domestic utility patents with the United States Patent and Trademark Office ("USPTO") and the World Intellectual Property Organization ("WIPO"). *See* USPTO No. 2012/20000952 and WIPO PCT/US2011/042762. These filings were for a bicycle rack in form and substance identical to the LGA Pixie/SportWing Invention, which had been disclosed to Cequent under the License Agreement. Among other things, in the course of prosecuting their Applications from and after the termination of the License Agreement, the Applicants:

      a.      claimed that they were the inventors of the Pixie/SportWing bicycle rack which they knew was false and misleading;

      b.      failed to disclose to the USPTO and the WIPO known prior patent applications, filings, licenses and patents and related prior art; and

      c.      concealed the identity of the known inventor, Marty L. Williams.

18. On information and belief, from and after the termination of the License Agreement, Cequent and the Applicants conspired with and aided and abetted each other in continuing to process the Applications for a patent of the LGA Pixie/SportWing based upon the concealment of information which would show the Applicatons were false, because the bike rack was the direct product of the knowledge Cequent had acquired from LGA about the LGA Pixie/SportWing Invention pursuant to the License Agreement.

19.     Cequent's right to manufacture, distribute and sell LGA's Pixie/SportWing terminated on January 28, 2012.

20.     On information and belief, the Applications remain pending with the USPTO and the WIPO and have never been corrected or withdrawn as required by law.

<u>The Silent Hitch Pin</u>

21.     On June 25, 2002, August 26, 2003, Sept. 20, 2005, and Dec. 20, 2011 United States Letters Patent Nos. 6,409,203, 6,609,725, 6,945,550 and 8,079,613 were issued to LGA for the Silent Hitch Pin.

22.     Cequent's right to manufacture, distribute and sell LGA's Silent Hitch Pin terminated on January 28, 2012, except for a permitted phase-out of Cequent's then-existing inventory and customer commitments, which is believed to have been completed.

23.     On information and belief, from and after the termination of the License Agreement, Cequent continues to manufacture, sell, license and distribute the Silent Hitch Pin, without LGA's consent or authority, directly and through others including but not limited to U-Haul.   Additionally, from and after the termination of the License Agreement, Cequent manufactures sells and distributes LGA's Silent Hitch Pin with other LGA Inventions, including Pixie/SportWing and GearCage.

<u>GearCage</u>

24.     On June 28, 2005, Dec. 20, 2011, and May 15, 2012, United States Letters Patent Nos. 6,910,609, 8,079,491 and 8,177,258 were issued to LGA for the GearCage.

25.     Cequent's right to manufacture, distribute and sell LGA's GearCage terminated on January 28, 2012.

26.     On information and belief, from and after the termination of the License Agreement, Cequent has continued to manufacture, sell, license and distribute the GearCage, without LGA's consent or authority, directly and through others including but not limited to U-Haul, RigidHitch, Hitch Pro, Dealer Supply Warehouse, HitchCorner of Denver, Colorado, Extreme Hitch of Denver, Colorado and CarID, all to the detriment and damage of LGA.

Trademarks

27.     LGA is owner of Trademarks identified as "GearCage" and "Silent Hitch Pin" which are registered at the USPTO under Registration Nos. 4296605 and 4296604, respectively ("LGA Trademarks").

28.     LGA also has the common law right to the Trademarks by exclusive use and/or use through license by others before Cequent's license with LGA.

29.     On information and belief and since the termination of the License Agreement on January 28, 2010 (2012), Cequent has unlawfully continued to use the LGA Trademarks to the detriment and damage of LGA.

Copyrights

30.     LGA is the owner of registered copyrights relating to the following: LGA Cargo Rack Operating Manuals, GearCage Ramp Accessory, Moover Transporter System, GearCage SP Cargo Rack, GearCage TT Cargo Rack, TwinTube U-Build-IT (No. TXu 1-847-969) ("LGA Copyrights").

31.     LGA remains the sole owner of the LGA Copyrights.

32.     On information and belief and since the termination of the License Agreement on January 28, 2012, Cequent has unlawfully has used, published and marked Cequent's products

with LGA Copyrights without LGA's agreement or consent to the detriment and damage of LGA.

<u>Particular Unlawful Acts Regarding LGA's Inventions, Trademarks and Copyrights.</u>

33.    Although LGA is still in the process of determining the full scope of the improper and unlawful use of its inventions, trademarks and copyrights, following the termination of the Licensing Agreement, the following is believed to have occurred:

    a.    On nearly a daily basis following the termination of the License Agreement, U-Haul has advertised for sale on the internet the Silent Hitch Pin and GearCage supplied to U-Haul through the mails via the Postal Service or delivered by a private or commercial interstate carrier from Cequent. These products are regularly sold by U-Haul to customers with line art, photographs, instructions, directions and text for use and assembly ("Sales Media"), all of which are protected by LGA's patents, trademarks and copyrights. Notwithstanding, U-Haul has mismarked the Silent Hitch Pin and GearCage as U-Haul products, without attribution or ownership of invention attributed to LGA, and sold them without license to do so.

    b.    In conjunction with these nearly daily sales to the public, U-Haul has also delivered LGA's Sales Media to U-Haul's customers with the Silent Hitch Pin and/or the GearCage through the U.S. Post Office or via a private or commercial interstate carrier. In none of these instances have the products or sales media disclosed that LGA is the owner and source of the Silent Hitch Pin, the GearCage and/or the Sales Media, fraudulently concealing

LGA's rights thereto as part of an intentional scheme or artifice to defraud LGA and the consuming public.

c.      On information and belief, Cequent has licensed the Silent Hitch Pin and GearCage and Sales Media to U-Haul as part of this same scheme or artifice to defraud, and U-Haul in turn has sold the Silent Hitch Pin, GearCage and Sales Media to the general public, over the internet, on nearly a daily basis from and after the termination of the License Agreement, using U-Haul's own name on the packaging.

d.      On information and belief, as part of this same scheme or artifice to defraud, Cequent transmitted the Silent Hitch Pin, GearCage and Sales Media to U-Haul via U.S. Postal mail, via a private or commercial interstate carrier, or via wire transmission, for purposes of U-Haul selling LGA Inventions to the public in interstate commerce over the internet and otherwise, creating income and proceeds to both U-Haul and Cequent because of the mismarking, false designation of origin, and failure to properly license these products and materials from LGA.

e.      The sale of these LGA Inventions by U-Haul, as supplied by Cequent, is accompanied by manuals or other written materials that falsely represent that Cequent has "patents pending" on the LGA Inventions, and which further include "Cequent Performance Products" and the Cequent logo to falsely identify Cequent as the originator/owner of the LGA Inventions.

f.      In the course of these sales, U-Haul has associated with Cequent and participated in Cequent's affairs to sell, license and market the LGA Inventions and Sales Media via the fraudulent use of the mails and internet in this activity.

g.      Similarly, Cequent has associated with U-Haul, and participated in U-Haul's affairs to sell, license and market the LGA Inventions and Sales Media to the public with these false representations via multiple instances of mail and internet usage.

h.      U-Haul and Cequent have conspired together by entering into an implicit or explicit agreement to sell the LGA Inventions, to use the copyrighted and trademarked materials of LGA, in interstate commerce, over the internet and otherwise, agreeing to conceal LGA as the owner and source and further agreeing to mismark and falsely represent that Cequent and/or U-Haul is the originator or source of the LGA Inventions and Sales Media.

i.      Upon information and belief, as part of this same scheme or artifice to defraud, on a daily basis from and after the termination of the License Agreement, customers in the general public throughout the United States have purchased from U-Haul over the internet Silent Hitch Pins, GearCages and Sales Media, which sales otherwise would have been to the benefit of LGA.

j.      LGA has been injured by reason of Cequent's and U-Haul's conduct through, *inter alia*, Defendants' continued operation in unfair competition

with LGA, by Cequent's improper and unlawful prosecution of the Applications after termination of the Licensing Agreement, and by Cequent's continued use of the term "patents pending" on products that purportedly are Cequent's to sell but which in fact are actually derived from the LGA Inventions.

k.  LGA is being harmed by Cequent's and U-Haul's use of the LGA products in the manner described above, because LGA's ownership in customers' minds is being placed in doubt and because LGA cannot sell its products to those customers who Cequent and/or U-Haul have sold infringing products to, when those Defendants had no right to sell those infringing products.

l.  LGA has suffered competitive damage flowing from the false representations, mismarking of products and materials, and false representations of origin by Cequent and U-Haul in their licensing and sales to the public.

m.  These sales have occurred from different physical sales outlets throughout the country and abroad, and over the internet in the same deceptive manner.

34.  U-Haul is or should be aware of LGA's ownership to and rights in the LGA Inventions, copyrights and trademarks because in April of 2012, U-Haul signed a non-disclosure agreement with LGA related to U-Haul's potential licensing or sale of the LGA Inventions.

## V.    CAUSES OF ACTION AND CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
#### (Declaratory Judgment Against Cequent)

35.    The allegations contained in paragraphs 1 through 34 of this Complaint are incorporated by reference herein.

36.    The conduct of Cequent from and after the termination of the License Agreement, in manufacturing, distributing and selling the LGA Inventions and in utilizing LGA Trademarks and LGA Copyrights is wrongful.

37.    Pursuant to Fed. R. Civ. P. 57 and 28 U.S.C. §§ 2201, *et seq.*, this Court has the power to declare the rights, status and legal relations of LGA and Cequent.

38.    An actual existing and *bona fide* antagonistic and denial of right and actual justiciable controversy exists between LGA and Cequent as to their legal relations with respect to the LGA Inventions, LGA Trademarks and LGA Copyrights, which can be determined only by declaratory judgment.

39.    By reason of the conduct of Cequent as set forth in this Complaint, LGA seeks, among other things, the following declarations ("Declarations"):

a.    that from and after January 28, 2012 Cequent did not have the lawful right to manufacture, distribute, license or sell products identical or substantially similar to the LGA Inventions or to use LGAs Trademarks or LGA Copyrighted Materials without the express consent of LGA;

b.    that LGA has not consented to Cequent's use of the LGA Inventions, LGA Trademarks or LGA Copyrights after January 28, 2012;

c.        that the continued processing of the Applications by Cequent was wrongful and in violation of the rights of LGA;

d.        that Cequent should be enjoined and restrained by this Court from the foregoing conduct, from maintaining or prosecuting the Applications and from any way holding out a claim of ownership or right to the LGA Inventions or using or publishing the LGA Trademarks or LGA Copyrighted Materials without the express consent of LGA;

e.        that Cequent's acts and omissions from and after the termination of the License Agreement were conducted knowingly and willfully; and

f.        that LGA has been damaged and Cequent has been unjustly enriched by its conduct.

## SECOND CLAIM FOR RELIEF
### (Unjust Enrichment and Accounting against Cequent and U-Haul)

40.    The allegations contained in paragraphs 1 through 39 of this Complaint are incorporated by reference herein.

41.    LGA conferred a benefit when Cequent retained the LGA Inventions, LGA Copyrights, and LGA Trademarks acquired from LGA pursuant to the Nondisclosure and License Agreements after the voluntary agreement to terminate the License Agreement on January 28, 2012.

42.    LGA conferred a benefit on U-Haul when U-Haul acquired from Cequent the LGA Inventions, LGA Copyrights, LGA Trademarks and Sales Media, when U-Haul knew such materials belonged to LGA.

43.     Cequent and U-Haul obtained and appreciated benefits when they retained the LGA Inventions, LGA Copyrights, LGA Trademarks and Sales Media, mismarking them and then using them to market and sell LGA's products as their own following the January 28, 2012 termination of the License Agreement.

44.     Cequent and U-Haul did not pay for the use of the LGA Inventions, LGA Copyrights, LGA Trademarks and Sales Media following the January 28, 2012 termination of the License Agreement.

45.     Under these circumstances, it would be inequitable and unjust for Cequent and U-Haul to retain the benefits LGA has conferred without payment to LGA.

46.     By reason of the foregoing, Cequent and U-Haul have been unjustly enriched by the manufacture, distribution and sale of LGA Inventions and materials from and after January 28, 2012, all of which is derived from information disclosed by LGA to Cequent and U-Haul.

47.     Cequent and U-Haul are in sole possession and control of business records and other documentary evidence of sales, revenues collected, accounts receivables, and payments made in connection with its sales using LGA Inventions, LGA Copyrights, LGA Trademarks and Sales Media at relevant times.

48.     An audit of Cequent's and U-Haul's business records from January 28, 2012 to the present is necessary to determine the amount of sales using LGA Inventions, LGA Copyrights, LGA Trademarks and Sales Media during this period that have been wrongfully used, licensed, sold or retained.

49.     A request to Cequent and U-Haul to cooperate in such an audit or voluntarily produce documents necessary to complete an accurate accounting would be futile.

50.     LGA is entitled to equitable relief including but not limited to an accounting, disgorgement of all revenues and/or profits received from such conduct, injunctive relief, both temporary and permanent and such other and further relief as the nature of the case may require.

## THIRD CLAIM FOR RELIEF
### (Civil Conspiracy against Cequent and U-Haul)

51.     The allegations contained in paragraphs 1 through 50 of this Complaint are incorporated by reference herein.

52.     Cequent agreed, combined and conspired with the Applicants to deprive LGA of its rights in the Inventions by continuing to process the Applications knowing of their invalidity from and after the termination of the License Agreement, and by selling the LGA Inventions from and after the termination of the License Agreement in violation of LGA's rights therein.

53.     By reason of such wrongful conduct LGA has suffered loss and damages.

54.     From and after the termination of the License Agreement, the Applicants have failed to submit a petition to correct inventorship in the Applications to reveal that they acquired intimate and confidential knowledge of the LGA Inventions and patents, the design thereof and other incidents of Plaintiff's intellectual property with respect thereto and used such in the Applications.  From and after the termination of the License Agreement, Cequent and Applicants conspired with or aided and abetted each other in their efforts to injure or usurp LGA Inventions, LGA Trademarks and LGA Copyrights all to the damage of LGA.

55.     In furtherance of such a conspiracy, Cequent and Applicants together or with others whose names are at present unknown to LGA have continued to process the Applications

from and after the termination of the License Agreement knowing they contain false assertions of ownership. Cequent and the Applicants agreed, by words or conduct, to continue processing the Applications from and after the termination of the License Agreement in order to usurp the rights of LGA to the LGA Inventions and to sell or license them through Cequent in violation of LGA's rights thereto for the purpose of accomplishing that goal through unlawful means.

56.     Cequent and Applicants, in furtherance of the conspiracy and to the damage and detriment of LGA, have utilized the Applications from and after the termination of the License Agreement to delay, inhibit or otherwise injure LGA's rights in the LGA Inventions for the purpose of selling and licensing Cequent's unauthorized products into the market under the guise of having lawful rights thereto.

57.     From and after the termination of the License Agreement, Cequent and U-Haul also agreed, combined and conspired with each other to deprive LGA of its rights in the Inventions, copyrights and trademarks by licensing, advertising and selling such Inventions while mismarking these products and materials and falsely representing that U-Haul and/or Cequent own them or may re-sell them, and that the LGA Inventions belong to, or were designed by U-Haul and/or Cequent.

58.     Cequent, U-Haul and the Applicants have jointly and in furtherance of the conspiracy or conspiracies maintained the Applications to the detriment of LGA and more particularly they have made, caused to be made, licensed and sold products identical to the LGA Inventions from and after the termination of the License Agreement, without LGA's consent in derogation of LGA's rights thereto. By such acts Cequent, U-Haul and the Applicants have

infringed, conspired to infringe and continue to infringe on the LGA Inventions, LGA Trademarks, and LGA Copyrights without just cause or excuse.

59.     LGA has been damaged thereby in various manners, including but not limited to Cequent's use of the False Applications and the phrase "patents pending" from and after the termination of the License Agreement and Cequent's and U-Haul's advertisement, distribution and sale of Inventions as their own, to justify the sales of products, identical or substantially similar with the LGA Inventions, to the public and to enable them to claim from and after the termination of the License Agreement through their distribution channels that they were authorized to do so, thereby preventing or limiting the ability of LGA to establish sales through such channels.

### FOURTH CLAIM FOR RELIEF
**(Intentional Interference with Prospective Economic Advantage**
**Against Cequent and U-Haul)**

60.     The allegations contained in paragraphs 1 through 59 of this Complaint are incorporated by reference herein.

61.      LGA has been involved in the acquisition of the LGA Inventions and the ongoing manufacturing, distribution, licensing and sale thereof both at wholesale and at retail.

62.     Since January 28, 2012, the date at which the License Agreement ceased to be effective, LGA had the valid and reasonable expectation that it would derive future economic benefits from its sales and distribution of LGA Inventions and Sales Media and its use of LGA Trademarks and LGA Copyrights.

63.     As of January 28, 2012, Cequent and U-Haul knew of LGA's business practices and its intentions to sell or license for sale the LGA Inventions to the public.

64.    From and after the termination of the License Agreement, Cequent and U-Haul used untrue, deceptive or misleading statements in their advertising and promotion, with the intent to purposely cause LGA's current or potential customers not to enter into, perform or continue their prospective business relations with LGA.

65.    Cequent's and U-Haul's continued use of untrue, deceptive, or misleading statements in its advertisements, with the intention of tortiously interfering with the current or future business relations between LGA and its current and potential customers is causing damage to LGA and is likely to cause irreparable injury.

66.    From and after the termination of the License Agreement, Cequent and U-Haul have intentionally and improperly disrupted the relationship between LGA and, the market, and sales and distribution channels to the public with the express intent to harm LGA, through wrongful conduct, including but not limited to Cequent's continued processing of the Applications, Cequent's and U-Haul's licensing, mismarking and sale of the LGA Inventions from and after the termination of the License Agreement in violation of LGA's rights therein, and in selling LGA Inventions and Sales Media as well as using LGA Trademarks and LGA Copyrights in conjunction therewith from and after the termination of the License Agreement. Cequent's and U-Haul's conduct with respect to the foregoing was undertaken wholly without privilege, right, justification, or LGA's consent.

67.    Cequent and U-Haul  acted maliciously and wantonly in interfering with LGA's prospective business advantage to the damage and detriment of LGA.

## FIFTH CLAIM FOR RELIEF
### (Infringement of Patents Against Cequent)

68.     The allegations contained in paragraphs 1 through 67 of this Complaint are incorporated by reference herein.

69.     Since the termination of the License Agreement on January 28, 2012 and to the present, Cequent has and continues to willfully and knowingly manufacture, make, use, distribute, license, sell and offer for sale, and commercially exploit the LGA Inventions that embody the patented invention without right and in violation of LGA's rights therein, all of the foregoing being an unlawful infringement of LGA's rights in the LGA Inventions relating thereto described in paragraph 9 above.

70.     LGA owned the LGA Inventions through the period of Cequent's infringing acts and still owns the patents.

71.     LGA has complied with the statutory notice requirement of placing a notice of the Letters Patent on the LGA Inventions that it manufactures and licenses.

72.     Cequent has had actual knowledge of its infringement of the foregoing LGA Inventions.

73.     Such infringement is and at all times has been willful, deliberate, and intentional and with full knowledge of LGA's patents and rights in the LGA Inventions.

74.     All of the acts alleged will continue unless enjoined by this Court and Cequent has damaged LGA by reducing LGA's sales, injuring LGA's reputation and deceiving the public, thus causing Plaintiff LGA irreparable harm, the extent of which is presently unknown. LGA has no adequate remedy at law and injunctive relief, both preliminary and permanent, should be granted.

75. Cequent should be required to account to LGA for its profits from such infringements from and after the termination of the License Agreement, and LGA should be awarded its damages in an amount adequate to compensate for such infringements, but in no event less than a reasonable royalty for the use made by Cequent as provided by 35 U.S.C. § 284, together with reasonable attorneys' fees pursuant to 35 U.S.C. § 285 and such other damages as may be allowable by law.

**SIXTH CLAIM FOR RELIEF**
**(Trademark Infringement Against Cequent and U-Haul)**

76. The allegations contained in paragraphs 1 through 75 of this Complaint are incorporated by reference herein.

77. LGA is owner of the LGA Trademarks identified as "GearCage" and "Silent Hitch Pin" which are registered at the USPTO under Registration Nos. 4296605 and 4296604, respectively, and of common law rights.

78. The LGA Trademarks are valid and protectable.

79. On information and belief, Cequent and U-Haul have, since January 28, 2012, infringed on LGA's Trademarks by using and displaying them in commerce, without the permission of LGA, in advertising and packaging for Cequent's and U-Haul's Silent Hitch Pin and GearCage products sold or supplied to others in violation of LGA's rights in the LGA Trademarks, all to the detriment and damage of LGA. Such representations by Cequent and U-Haul are either false, misleading or have a tendency to deceive consumers purchasing either product.

80. Cequent's and U-Haul's affirmative and material misrepresentations in commercial advertising and promotion from and after the termination of the License Agreement

have been disseminated to their customers and potential customers, many, if not all, of whom are also customers or potential customers of LGA, which is likely to cause confusion. The marks are similar, if not identical. Cequent and U-Haul willfully and intentionally infringed on LGA Trademarks. Such customers have been actually confused and/or deceived by the claims published by Defendants. LGA, Cequent and U-Haul market the same products and use the same marketing channels in Colorado. These claims are likely to further deceive existing and potential customers of the parties by implying deficiencies in the LGA's product that do not exist.

81.    The actions of Cequent and U-Haul, from and after the termination of the License Agreement, have and are likely to continue to injure LGA by causing LGA to lose customers and sales, resulting in business losses in an amount to be determined at trial and that are presently unknown to LGA, but that are believed to be substantial and are accumulating on an ongoing basis.

82.    The actions of Cequent and U-Haul, from and after the termination of the License Agreement, have and will continue to cause LGA substantial harm. LGA has a reasonable interest in its products, including GearCage and Silent Hitch Pin and which interest has been harmed or is subject to harm from the affirmative misrepresentations of Cequent and U-Haul.

83.    The damage to LGA's reputation and goodwill is continuing. Cequent and U-Haul have caused and continue to cause irreparable harm to LGA for which LGA is entitled to preliminary and permanent injunctive relief.

## SEVENTH CLAIM FOR RELIEF
### (False Advertising Against Cequent and U-Haul)

84.     The allegations contained in paragraphs 1 through 83 of this Complaint are incorporated by reference herein.

85.     Cequent and U-Haul made false and misleading representations of fact in connection with the commercial advertising or promotion of their products in commerce from and after the termination of the License Agreement.  The representations consisted of either actual misstatements, partially correct statements, or the failure to disclose certain material facts regarding the LGA Inventions in their commercial advertisements and promotions is likely to cause confusion or deceive customers and consumers as to the origin, nature, qualities and characteristics of the LGA Inventions.

86.     Cequent's and U-Haul's false and misleading representations of fact have injured LGA and caused LGA damage.

87.     Cequent's and U-Haul's acts and omissions violate 15 U.S.C. § 1125(a).

88.     Cequent's and U-Haul's continued use of false or misleading representations of fact or its continued failure to disclose certain facts regarding Plaintiff's products are causing irreparable injury to LGA, thereby warranting an order granting preliminary and permanent injunctive relief.

## EIGHTH CLAIM FOR RELIEF
### (Copyright Infringement Against Cequent and U-Haul)

89.     The allegations contained in paragraphs 1 through 88 of this Complaint are incorporated by reference herein.

90.     LGA possesses valid copyrights with the LGA Copyrights.

91.     On information and belief, Cequent  and U-Haul have, since January 28, 2012, willfully infringed on, misappropriated, and copied protectable elements of LGA's copyrights, images and written manuals developed by LGA for its GearCage invention, copyrighted under United States Copyright Office No. TXU1-847-969,  with the intent to commercially exploit these works to which Cequent and U-Haul have no proprietary rights.  From and after the termination of the License Agreement, Cequent and U-Haul have published, distributed and used LGA's copyrighted materials, without the permission of LGA, in advertising and packaging for Cequent's and U-Haul's products sold or supplied to others in violation of LGA's rights, all to the detriment and damage of LGA.

92.     By reason of these willful infringements of copyrights, LGA has sustained injury, loss and damage to its ownership rights and Defendants have unlawfully, unfairly and wrongfully derived and will continue to derive income from these infringing acts.

### NINTH CLAIM FOR RELIEF
**(Violation of 18 U.S.C. § 1962(c) and (d) – Racketeer Influenced and Corrupt Organizations Act Against Cequent)**

93.     The allegations contained in paragraphs 1 through 92 of this Complaint are incorporated by reference herein.

94.     Cequent is a "person" within the meaning of 18 U.S.C. § 1961(3).

95.      U-Haul is an "enterprise" engaged in activities that affect interstate commerce, being an active business corporation organized under the laws of the State of  Nevada within the meaning of 18 U.S.C. § 1961(4).

96.     As alleged above and particularly in ¶¶ 33(a)–(m), from and after the termination of the License Agreement, Cequent, in association with U-Haul, participated in U-Haul's

conduct and affairs of advertising, marketing and sales over the internet through a pattern of racketeering activity in violation of 18 U.S.C. §1962(c) and (d).

97. The predicate acts which constitute a pattern of racketeering activity that have occurred from and after the termination of the License Agreement are:

a. <u>Mail Fraud, 18 U.S.C. § 1341</u>: Cequent, alone or in conjunction with U-Haul and possibly others, devised or intended to devise a scheme to defraud the consuming public for LGA Inventions, the Plaintiff and others by fraudulently representing their ownership rights or other ability or authority to market, manufacture, license and/or distribute, the products and materials described in this complaint through the use of the mail and/or the delivery services of a private or commercial interstate carrier for the purpose of executing or attempting to execute their scheme to defraud.

b. <u>Electronic Communications-Wire Fraud, 18 U.S.C. § 1343:</u> Cequent, alone or in conjunction with U-Haul and possibly others, devised or intended to devise a scheme to defraud the Plaintiff, Plaintiff's potential and actual customers, and others by fraudulently representing their ownership rights, or other ability or authority to market, manufacture, license and/or distribute, the LGA Inventions, Sales Media and products described in this complaint through the use of the telephone, the internet or electronic communication by the transmission of writings, signs, signals

and pictures in interstate commerce, in furtherance of their scheme to defraud.

c. <u>Criminal Copyright Infringement, 18 U.S.C. § 2319</u>: Cequent, alone or in conjunction with U-Haul and possibly others, infringed upon the copyright of the Plaintiff, willfully, and for purposes of commercial advantage, or private financial gain, as stated in 17 U.S.C. § 506.

98. The acts of racketeering from and after the termination of the License Agreement as alleged above, all occurred within a ten year period, reflect a continuous course of related conduct, and constitute a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

99. LGA was and continues to be injured in its business or property by reason of Cequent's violation of 18 U.S.C. § 1962, in that, as a direct and proximate result of Cequent's complained of acts, Plaintiff suffered damages, in an amount to be proven at trial.

100. By reason of Cequent's violation of 18 U.S.C. § 1962, LGA is entitled, pursuant to 18 U.S.C. § 1964(c), to treble the damages sustained, with interest as provided by law, and reasonable attorneys' fees.

**TENTH CLAIM FOR RELIEF**
**(Violation of 18 U.S.C. § 1962(c) and (d) – Racketeer Influenced and**
**Corrupt Organizations Act Against U-Haul)**

101. The allegations contained in paragraphs 1 through 100 of this Complaint are incorporated by reference herein.

102. U-Haul is a "person" within the meaning of 18 U.S.C. § 1961(3).

103. Cequent is an "enterprise" engaged in activities that affect interstate commerce, being an active business corporation organized under the laws of the State of Delaware  within the meaning of 18 U.S.C. § 1961(4).

104. As alleged above and particularly in ¶¶ 33(a)-(m), from and after the termination of the License Agreement, U-Haul, in association with Cequent, participated in Cequent's conduct and affairs of advertising, marketing and sales over the internet through a pattern of racketeering activity in violation of 18 U.S.C. §1962(c) and (d).

105. The predicate acts which constitute a pattern of racketeering activity that have occurred from and after the termination of the License Agreement are:

    a.    <u>Mail Fraud, 18 U.S.C. § 1341</u>:  U-Haul, alone or in conjunction with Cequent and possibly others, devised or intended to devise a scheme to defraud the consuming public for LGA Inventions, the Plaintiff and others by fraudulently representing their ownership rights or other ability or authority to market, manufacture, license and/or distribute, the products and materials described in this complaint through the use of the mail and /or the delivery services of a private or commercial interstate carrier for the purpose of executing or attempting to execute their scheme to defraud.

    b.    <u>Electronic Communications-Wire Fraud, 18 U.S.C. § 1343</u>: U-Haul, alone or in conjunction with Cequent and possibly others, devised or intended to devise a scheme to defraud the Plaintiff, Plaintiff's potential and actual customers, and others by fraudulently representing their ownership rights, or other ability or authority to market, manufacture, license and/or

distribute, LGA Inventions, Sales Media and the products described in this complaint through the use of the telephone, the internet or electronic communication by the transmission of writings, signs, signals and pictures in interstate commerce, in furtherance of their scheme to defraud.

c.   Criminal Copyright Infringement, 18 U.S.C. § 2319:  U-Haul, alone or in conjunction with Cequent and possibly others, infringed upon the copyright of the Plaintiff, willfully, and for purposes of commercial advantage, or private financial gain, as stated in 17 U.S.C. § 506.

106.   The acts of racketeering from and after the termination of the License Agreement as alleged above, all occurred within a ten year period, reflect a continuous course of related conduct, and constitute a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

107.   LGA was and continues to be injured in its business or property by reason of U-Haul's violation of 18 U.S.C. § 1962, in that, as a direct and proximate result of U-Haul's complained of acts, Plaintiff suffered damages, in an amount to be proven at trial.

108.   By reason of U-Haul's violation of 18 U.S.C. § 1962, LGA is entitled, pursuant to 18 U.S.C. § 1964(c), to treble the damages sustained, with interest as provided by law, and reasonable attorneys' fees.

### ELEVENTH CLAIM FOR RELIEF
### (Unfair Competition Against Cequent and U-Haul)

109.   The allegations contained in paragraphs 1 through 108 of this Complaint are incorporated by reference herein.

110.     From and after the termination of the License Agreement, Cequent and U-Haul copied LGA products and marketed them for sale as their own.

111.     Cequent's and U-Haul's conduct was and is likely to deceive the public and cause difficulties in distinguishing between LGA's, Cequent's and U-Haul's products.

112.     LGA has suffered damages to its goodwill because Cequent and U-Haul copied LGA's products and sales media and entered defective products into the marketplace.

113.     Cequent's and U-Haul's copying also restrained LGA's ability to grow the market for its goods and created barriers to entry.

114.     LGA incurred damages as a direct result of Cequent's and U-Haul's unfair competition.

## TWELFTH CLAIM FOR RELIEF
### (Reverse Passing Off Against Cequent and U-Haul)

115.     The allegations contained in paragraphs 1 through 114 of this Complaint are incorporated by reference herein.

116.     The LGA Inventions marketed, licensed and sold by Cequent and U-Haul from and after the termination of the License Agreement originated with LGA. Cequent acquired them pursuant to the License Agreement, but continued and continues to market and/or license the LGA Inventions for sale under its own name or under U-Haul's name after the License terminated.

117.     Cequent and U-Haul's falsely designated the origin of products they sold to the public and represented them to the public as their own from and after the termination of the License Agreement.

118. Cequent's and U-Haul's false designation of the origin of its products was likely to cause customer confusion.

119. LGA has been harmed by Cequent's and U-Haul's false designation of the origin of the LGA Inventions it sold to the public, including but not limited to damage to LGA's goodwill from Defendants' sale of defective products identical to LGA's Inventions.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Let's Go Aero, Inc. requests that the Court:

a. enter an Order containing the Declarations set forth above;

b. award LGA compensatory damages against the Defendants for the amounts proven at trial and to the fullest extent provided by law;

c. order Defendants to account for all sales, purchases, revenues and profits derived from their improper use of the LGA Inventions from and after the termination of the License Agreement and to disgorge the same forthwith or, alternatively, for judgment in the amount thereof;

d. award LGA its attorneys' fees, costs and exemplary, exceptional or treble damages to the fullest extent provided by law, including 35 U.S.C. §§ 284, 285 and 15 U.S.C. § 1117, 18 U.S.C. § 1964.

e. issue preliminary and permanent injunctions to Cequent, U-Haul and affiliated officers, directors, representatives, successors and assigns and all those in active concert or in active participation with them which:

i.     enjoined them from committing further acts of infringement of the LGA Inventions, LGA Trademarks or LGA Copyrights and from aiding or abetting or inducing in any way the infringement thereof;

ii.     required them to account to LGA for all revenues, gains and profits derived by them from the described acts from and after the termination of the License Agreement;

iii.     required them to pay to LGA all costs of this action and LGA's reasonable attorneys' fees pursuant to the provisions of 35 U.S.C. § 285 and 15 U.S.C. § 1117 because of the calculated and deliberate nature of the infringing activities sought to be enjoined hereby;

iv.     enjoin Cequent and the Applicants from further prosecuting the Applications and from taking any further actions to utilize the LGA Inventions, LGA Trademarks, or LGA Copyrights without LGA's prior and express consent;

f.     order Cequent and U-Haul to undertake a corrective advertising campaign to rectify the confusion, deception, or misrepresentations caused by their illegal actions.

g.     awards treble damages actually sustained and the costs of suit to Plaintiff, including reasonable expert expenses and attorneys' fees, pursuant to 18 U.S.C. § 1964(c) with interest thereon as provided by law; and

h.      grant LGA such other and further relief as may be required by law or equity, including ancillary relief.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

Dated:   June 17, 2014.

Respectfully submitted,

SILVER & DeBOSKEY,
A Professional Corporation

By:      */s/Martin D. Beier*
        Thomas M. Haskins III (#17651)
        Martin D. Beier (#20188)
        Silver & DeBoskey P.C.
        1801 York Street
        Denver, CO 80206
        (303) 399-3000
        thaskins@s-d.com
        beierm@s-d.com

DENNIS W. HARTLEY, P.C.

By:      */s/Dennis W. Hartley*
        Dennis W. Hartley (#0788)
        Dennis W. Hartley, P.C.
        422 E. Vermijo Ave.
        Colorado Springs, CO 80903

ATTORNEYS FOR PLAINTIFF

EL6549