**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:14-cv-01600-MEH

LET'S GO AERO, INC., a Colorado corporation

      Plaintiff

v.

CEQUENT PERFORMANCE PRODUCTS, INC.,
f/k/a CEQUENT TOWING PRODUCTS, INC.,
a Delaware corporation,
      Defendant

---

## SECOND AMENDED COMPLAINT

---

Plaintiff Let's Go Aero, Inc., a Colorado corporation ("LGA"), as and for its Second Amended Complaint against Cequent Performance Products, Inc., a Delaware corporation, ("Cequent") alleges and states as follows:

## I.    NATURE OF THE ACTION

1.    The gravamen of LGA's claims against Cequent is Cequent's usurpation of LGA's intellectual property and related rights, pattern of false designation of origin and mismarking of LGA's products by Defendant in representing them to the public as its own, and the unjust enrichment flowing therefrom, following the termination of a license agreement on January 28, 2012 between LGA and Cequent. Since that time, Cequent has and continues to misappropriate and infringe upon LGA's inventions, patents, trademarks, and copyrights for its own use and benefit with the active cooperation others, in contravention of LGA's rights.

## II.     PARTIES

2.     Plaintiff LGA is a Colorado corporation with its principal place of business in Colorado Springs, Colorado.

3.     Defendant Cequent is a Delaware corporation with its principal place of business at 4774 Anchor Court West, Plymouth, Michigan.  Cequent was formerly known as Cequent Towing Products, Inc.

## III.     JURISDICTION AND VENUE

4.     This Court has jurisdiction over the subject matter and parties to this action pursuant to 28 U.S.C. § 1332 and because the parties are diverse and the amount in controversy exceeds $75,000 exclusive of interest and costs.  This Court also has jurisdiction to render declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202 as well as jurisdiction over the claims contained herein for patent infringement, copyright infringement, and trademark infringement pursuant to the laws of the United States, including but not limited to 35 U.S.C. §§ 101, *et seq.*, (specifically 35 U.S.C. §§ 271, 281 to 287), 17 U.S.C. §§ 101, *et seq.*, and 15 U.S.C. §§ 1125(a) and (c).  This Court also has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338.  Supplemental jurisdiction over LGA's state law claims exists pursuant to 28 U.S.C. § 1367 because they are so related to the other claims that together all of the claims form the same case or controversy.

5.     This Court has personal jurisdiction over Cequent, which regularly has and continues to do business in Colorado pursuant to C.R.S. § 13-1-124.

6.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

## IV.    FACTUAL ALLEGATIONS

### LGA Inventions and Patents, Trademarks and Copyrighted Works

7.    LGA is the sole assignee and beneficial owner of various inventions created by its founder and president, Marty L. Williams.   Design details, trade secrets and confidential information were provided to Cequent pursuant to the License Agreement dated January 2, 2008, and as amended, which incorporated the Parties' previous Nondisclosure Agreement (collectively, "License Agreement").

8.    Included among the inventions so disclosed and licensed by LGA to Cequent were certain bicycle racks, towing hitch pins and a basket covered by the following patents: U.S. Patents, Design Pat. No .D 684917 and Utility Pat. Nos. 6,409,203, 6,609,725, 6,945,550, 8,079,491 and 8,079,613.

9.    LGA has common law and registered trademarks, U.S. Trademark Registration Nos. 4,296,605, 4,296,606, 4,252,371, 4,25,2,370 and 4,296,604, and common law trademark rights in "Moover"™ ("LGA Trademarks").

10.    LGA owns the copyright for LGA Cargo Rack Operating Manuals, GearCage Ramp Accessory, Moover Transporter System, GearCage SP Cargo Rack, GearCage TT Cargo Rack, TwinTube U-Build-IT registered with the U.S. Copyright Office, (No. TXu 1-847-969) ("LGA Copyrights").

11.    The License Agreement was terminated by the voluntary agreement of LGA and Cequent effective January 28, 2012.

12.    On information and belief, from and after the termination of the License Agreement, Cequent continued and continues to manufacture, import, distribute, sell, offer to

sell, license and obtain financial benefit from the following without the agreement or consent of LGA:

      a.      Pixie Bicycle Racks ("Pixie/Sport Wing");

      b.      Silent Hitch Pins/SHP ("Silent Hitch Pin"); and

      c.      GearCage Basket ("GearCage")

(collectively, the "LGA Inventions").

13.      After termination of the License Agreement, Cequent continued and continues to sell and market its infringing products under LGA's trademarks, including, Gear Cage®, Twin Tube®, Silent Hitch Pin®, GearDeck®, GearSpace®, and Moover™.

14.      After termination of the License Agreement, Cequent continued and continues, to copy, distribute, display, and make derivative works of photos, text and content owned by LGA. In addition, on information and belief, Cequent has removed copyright management information from LGA's brochures and marketing materials.

15.      On information and belief, from and after the termination of the License Agreement, Cequent has been and is now selling and licensing products based upon and identical to the LGA Inventions through various wholesale and retail outlets including but not limited to U-Haul, Walmart, Target, Hitch Corner of Denver, Colorado, Amazon and REI, all of whom have retail outlets selling LGA Inventions to customers in Colorado and elsewhere.

16.      After the termination of the License Agreement, Cequent, with knowledge of the Plaintiff's patents, including Design Pat. No. D684,917, and Utility Pat. Nos. 6,409,203, 6,609,725, 6,945,550, and 8,079,491 sold, offered for sale, imported, manufactured or had manufactured and distributed infringing products, including the Silent Hitch Pin, Gear Cage and

the Pixie/Sport Wing or V Bike Rack, using Plaintiff's patented designs, trademarks and copyrighted materials. After the termination of the License Agreement, Cequent continued to include Plaintiff's patent numbers as patent markings on the Silent Hitch Pin and the Pixie/Sport Wing Bike Rack, and otherwise represented that its products were manufactured, sold and used under authority from Plaintiff as owner of the patents at issue, when it had no such authority and was infringing said patents. The mis-marking and misrepresentation as to the existence of any such authority or permission was an essential material element in Cequent's marketing of these products.

17. By way of the mis-marking and improper marketing and misrepresentation of authority to incorporate Plaintiff's designs protected by Plaintiff's patents, in conjunction with its predatory marking, Cequent has unfairly competed with Plaintiff, resulting in lost sales, sales opportunities, and impaired Plaintiff's attempts to gain customers and market.

18. With knowledge of Plaintiff's intellectual property rights, including the patents, copyrights and trademarks, Cequent has encouraged and instructed purchasers of the products to utilize and use the Silent Hitch Pin, such that purchasers and users of the Silent Hitch Pin inevitably infringe the Utility Pat. No.6,409,203, and 6,945,550. Cequent has, by its actions, actively induced and contributed to the infringement of Plaintiff's patent rights by the end users of Cequent's products.

<u>The Pixie/SportWing Bicycle Rack</u>

19. On June 25, 2013, United States Letters Patent No. D684,917 was issued to LGA for the Pixie/SportWing Bicycle Rack.

20.    On or about July 1, 2010, July 13, 2010, and December 15, 2010, while the License Agreement, which recognized LGA's Inventions, was in force, David Cupar, Esq.; Paul Caruso, Cequent's Vice President of Business Development; Jason Matthew Dreger of Livonia, Michigan; Gail Rae Matheus of Salem, Michigan; Mitchell Auerbach of Ft. Wayne, Indiana; Maurice R. Fredricks of Grand Heaven, Michigan; Todd Ireland of Coopersville, Michigan; Brett Koostra of Grand Haven, Michigan; and Sean Phillips of Huntsville, Canada (collectively, "Applicants"), filed or caused to be filed applications for international and domestic utility patents with the United States Patent and Trademark Office ("USPTO") and the World Intellectual Property Organization ("WIPO").  *See* USPTO No. 2012/20000952 and WIPO PCT/US2011/042762.  These filings were for a bicycle rack in form and substance identical to the LGA Pixie/SportWing Invention, which had been disclosed to Cequent under the License Agreement.  Among other things, in the course of prosecuting their Applications from and after the termination of the License Agreement, the Applicants:

    a.    claimed that they were the inventors of the Pixie/SportWing bicycle rack which they knew was false and misleading;

    b.    failed to disclose to the USPTO and the WIPO known prior patent applications, filings, licenses and patents  and related prior art; and

    c.    concealed the identity of the known inventor, Marty L. Williams.

21.    On information and belief, from and after the termination of the License Agreement, Cequent and the Applicants conspired with and aided and abetted each other in continuing to process the Applications for a patent of the LGA Pixie/SportWing based upon the concealment of information which would show the Applications were false, because the bike

rack was the direct product of the knowledge Cequent had acquired from LGA about the LGA Pixie/SportWing Invention pursuant to the License Agreement.

22.     Cequent's right to manufacture, distribute, license and sell LGA's Pixie/SportWing terminated on January 28, 2012.

23.     On information and belief, the Applications remain pending with the USPTO and the WIPO and have never been corrected or withdrawn as required by law.

<u>The Silent Hitch Pin</u>

24.     On June 25, 2002, August 26, 2003, Sept. 20, 2005, and Dec. 20, 2011 United States Letters Patent Nos. 6,409,203, 6,609,725, 6,945,550 and 8,079,613 were issued to LGA for the Silent Hitch Pin.

25.     Cequent's right to manufacture, distribute and sell LGA's Silent Hitch Pin terminated on January 28, 2012, except for a permitted phase-out of Cequent's then-existing inventory and customer commitments of approximately 23,300 Silent Hitch Pins, which is believed to have been completed.

26.     On information and belief, from and after the termination of the License Agreement, Cequent continued and continues to manufacture, sell, license and distribute the Silent Hitch Pin, without LGA's consent or authority, directly and through others.  Additionally, from and after the termination of the License Agreement, Cequent manufactures sells and distributes LGA's Silent Hitch Pin with other LGA Inventions, including Pixie/SportWing and GearCage.

GearCage

27.    On June 28, 2005 and Dec. 20, 2011 United States Letters Patent Nos. 6,910,609 and 8,079,491 were issued to LGA for the GearCage.

28.    Cequent's right to manufacture, distribute and sell LGA's GearCage terminated on January 28, 2012.

29.    On information and belief, from and after the termination of the License Agreement, Cequent has continued and continues to manufacture, sell, license and distribute the GearCage, without LGA's consent or authority, directly and through others including but not limited to U-Haul, RigidHitch, Hitch Pro, Dealer Supply Warehouse, HitchCorner of Denver, Colorado, Extreme Hitch of Denver, Colorado and CarID, all to the detriment and damage of LGA.

Trademarks

30.    LGA is owner of Trademarks identified as "GearCage®," "TwinTube®," "GearDeck®," "GearSpace®," and "Silent Hitch Pin®" by common law, due to its long-standing use in association with its products and the use under license to Cequent during the term of the License Agreement, for the Silent Hitch Pin® and Gear Cage®.  In addition, Plaintiff has registered the marks at the United States Patent and Trademark Office ("USPTO") under Registration Nos. 4,296,605, 4,296,606, 4,252,371, 4,25,2,370 and 4,296,604, respectively ("LGA Trademarks").

31.    On information and belief and since the termination of the License Agreement on January 28, 2012, Cequent has unlawfully continued to use the LGA Trademarks to the

detriment and damage of LGA and thereby infringed Plaintiff's common law trademarks and its registered trademarks.

Copyrights

32.     LGA is the owner of registered copyrights relating to the following:  LGA Cargo Rack Operating Manuals, GearCage Ramp Accessory, Moover Transporter System, GearCage SP Cargo Rack, GearCage TT Cargo Rack, TwinTube U-Build-IT (No. TXu 1-847-969) ("LGA Copyrights").

33.     LGA remains the sole owner of the LGA Copyrights.

34.     On information and belief and since the termination of the License Agreement on January 28, 2012, Cequent has unlawfully made copies, published, distributed and made use of Plaintiff's copyrighted materials without LGA's agreement or consent and thereby infringed Plaintiff's copyrights to the detriment and damage of LGA.

35.     In addition to the unlawful infringements of Plaintiff's copyrights, Defendant has altered or otherwise removed Plaintiff's copyright notices and other copyright management markings.

Particular Unlawful Acts Regarding LGA's Inventions, Trademarks and Copyrights.

36.     Although LGA is still in the process of determining the full scope of the improper and unlawful use of its inventions, trademarks and copyrights, following the termination of the Licensing Agreement, the following is believed to have occurred:

    a.      On nearly a daily basis following the termination of the License Agreement, Cequent has advertised for sale on the internet the Silent Hitch Pin and GearCage.  These products are regularly sold by Cequent   to

9

customers with line art, photographs, instructions, directions and text for use and assembly ("Sales Media"), all of which are owned and copyrighted by LGA, and protected by LGA's patents, trademarks and copyrights. Notwithstanding, Cequent has mismarked the Silent Hitch Pin and GearCage as Cequent products, without attribution or ownership of invention attributed to LGA, and sold them without license to do so.

b.  Cequent has sold the unauthorized products under trademarks owned by LGA without authorization and thereby have wilfully and intentionally infringed LGA's common law and registered trademarks.

c.  On information and belief, Cequent has provided LGA's Silent Hitch Pin and GearCage and Sales Media to others, and those others, in turn have copied, displayed and disseminated the Silent Hitch Pin, GearCage and Sales Media to the general public, over the internet, on nearly a daily basis from and after the termination of the License Agreement, using their own names on the packaging.

d.  On information and belief, Cequent transmitted the Silent Hitch Pin, GearCage and Sales Media to these others in interstate commerce over the internet and otherwise in aid of Cequent's marketing of the infringing products or inducing and indirectly infringing LGA's patents, creating income and proceeds to Cequent because of the mismarking, false designation of origin, and failure to properly license these products and materials from LGA.

e.    The sale of these LGA Inventions by others, as supplied by Cequent, is accompanied by manuals or other written materials that falsely represent that Cequent has "patents pending" as well as listing LGA's patents, thereby falsely claiming that the products are sold under LGA's authority, contrary to the facts and law, and which further include "Cequent Performance Products" and the Cequent logo to falsely identify Cequent as the originator/owner of the LGA Inventions or an authorized provider of the same.

f.    Cequent and these others have conspired together by entering into an implicit or explicit agreement to sell the LGA Inventions, to use the copyrighted materials of LGA, in interstate commerce, over the internet and otherwise, agreeing to conceal LGA as the owner and source and further agreeing to mismark and falsely represent that Cequent and/or others are the originator or source of the LGA Inventions and Sales Media. As part of this conspiracy, Cequent and/or these others have removed LGA's copyright management notices and information, and thereby have further infringed LGA's copyrights in the material.

g.    Upon information and belief, as part of this same scheme, on a daily basis from and after the termination of the License Agreement, customers in the general public throughout the United States have purchased from Cequent or these others, Silent Hitch Pins, GearCages and Sales Media, which sales otherwise would have been to the benefit of LGA.

h.      LGA has been injured by reason of the conduct of Cequent and its co-conspirators' through, *inter alia*, Defendant's continued operation in unfair competition with LGA, by Cequent's improper and unlawful prosecution of the Applications after termination of the Licensing Agreement, and by Cequent's continued use of the term "patents pending," false marking, infringement of LGA's trademarks and copyrights in association with products that infringe LGA's patents and misappropriated from LGA.  Each of these acts as well as Cequent's unfair trade practices in its marketing and predatory market activity was intended to and has injured LGA in the marketplace and thereby unfairly competed against LGA.

i.      LGA is being directly and indirectly harmed by Cequent's use of the LGA products and intellectual property in the manner described above.  LGA's ownership, control and rights in its intellectual property is being misrepresented and disparaged.  As a result, LGA cannot sell its products to those customers who Cequent and/or its co-conspirators have sold infringing products to, in spite of the fact that Cequent  had and has no right to sell or license those infringing products or infringe the copyrights, trademarks or other intellectual property.

j.      LGA has suffered competitive damage flowing from the false representations, mismarking of products and materials, and false

representations of origin by Cequent and its co-conspirators in their licensing and sales to the public.

k. These sales have occurred from different physical sales outlets throughout this country and abroad, and over the internet in the same deceptive manner.

## V. CAUSES OF ACTION AND CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### (Declaratory Judgment)

37. The allegations contained in paragraphs 1 through 36 of this Complaint are incorporated by reference herein.

38. The conduct of Cequent from and after the termination of the License Agreement, in manufacturing, distributing and selling the LGA Inventions and in utilizing LGA Trademarks and LGA Copyrights is wrongful.

39. Pursuant to Fed. R. Civ. P. 57 and 28 U.S.C. §§ 2201, *et seq.*, this Court has the power to declare the rights, status and legal relations of LGA and Cequent.

40. An actual existing and *bona fide* antagonistic and actual justiciable controversy exists between LGA and Cequent as to their legal relations with respect to the LGA Inventions, LGA Trademarks and LGA Copyrights, which can be determined only by declaratory judgment.

41. By reason of the conduct of Cequent as set forth in this Complaint, LGA seeks, among other things, the following declarations ("Declarations"):

a. that from and after January 28, 2012 Cequent did not have the lawful right to manufacture, distribute, license or sell products identical or

substantially similar to the LGA Inventions or to use LGAs Trademarks or LGA Copyrighted Materials without the express consent of LGA;

b.    that LGA has not consented to Cequent's use of the LGA Inventions, LGA Trademarks or LGA Copyrights after January 28, 2012;

c.    that the continued processing of the Applications by Cequent was wrongful and in violation of the rights of LGA;

d.    that Cequent should be enjoined and restrained by this Court from the foregoing conduct, from maintaining or prosecuting the Applications and from any way holding out a claim of ownership or right to the LGA Inventions or using or publishing the LGA Trademarks or LGA Copyrighted Materials without the express consent of LGA;

e.    that Cequent's acts and omissions from and after the termination of the License Agreement were conducted knowingly and willfully; and

f.    that LGA has been damaged and Cequent has been unjustly enriched by its conduct.

## SECOND CLAIM FOR RELIEF
### (Unjust Enrichment and Accounting)

42.    The allegations contained in paragraphs 1 through 41 of this Complaint are incorporated by reference herein.

43.    LGA conferred a benefit when Cequent retained the LGA Inventions, LGA Copyrights, and LGA Trademarks and Sales Media acquired from LGA pursuant to the Nondisclosure and License Agreements after the voluntary agreement to terminate the License Agreement on January 28, 2012.

44. Cequent obtained and appreciated benefits when it retained the LGA Inventions, LGA Copyrights, LGA Trademarks and Sales Media, mismarking them and then using them to market and sell LGA's products as its own following the January 28, 2012 termination of the License Agreement.

45. Cequent did not pay for the use of the LGA Inventions, LGA Copyrights, LGA Trademarks and Sales Media following the January 28, 2012 termination of the License Agreement.

46. Under these circumstances, it would be inequitable and unjust for Cequent to retain the benefits LGA has conferred without payment to LGA.

47. By reason of the foregoing, Cequent has been unjustly enriched by the manufacture, distribution and sale of LGA Inventions and materials from and after January 28, 2012, all of which is derived from information disclosed by LGA to Cequent.

48. Cequent is in sole possession and control of business records and other documentary evidence of sales, revenues collected, accounts receivables, and payments made in connection with its sales using LGA Inventions, LGA Copyrights, LGA Trademarks and Sales Media at relevant times.

49. An audit of Cequent's business records from January 28, 2012 to the present is necessary to determine the amount of sales using LGA Inventions, LGA Copyrights, LGA Trademarks and Sales Media during this period that have been wrongfully used, licensed, sold or retained.

50. A request to Cequent to cooperate in such an audit or voluntarily produce documents necessary to complete an accurate accounting would be futile.

51.     LGA is entitled to equitable relief including but not limited to an accounting, disgorgement of all revenues and/or profits received from such conduct, injunctive relief, both temporary and permanent and such other and further relief as the nature of the case may require.

### THIRD CLAIM FOR RELIEF
### (Civil Conspiracy)

52.     The allegations contained in paragraphs 1 through 51 of this Complaint are incorporated by reference herein.

53.     Cequent agreed, combined and conspired with the Applicants to deprive LGA of its rights in the Inventions by continuing to process the Applications knowing of their invalidity from and after the termination of the License Agreement, and by selling the LGA Inventions from and after the termination of the License Agreement in violation of LGA's rights therein.

54.     By reason of such wrongful conduct LGA has suffered loss and damages.

55.     From and after the termination of the License Agreement, the Applicants have failed to submit a petition to correct inventorship in the Applications to reveal that they acquired intimate and confidential knowledge of the LGA Inventions and patents, the design thereof and other incidents of Plaintiff's intellectual property with respect thereto and used such in the Applications.  From and after the termination of the License Agreement, Cequent and Applicants conspired with or aided and abetted each other in their efforts to injure or usurp LGA Inventions, LGA Trademarks and LGA Copyrights all to the damage of LGA.

56.     In furtherance of such a conspiracy, Cequent and Applicants together or with others whose names are at present unknown to LGA have continued to process the Applications from and after the termination of the License Agreement knowing they contain false assertions of ownership.  Cequent and the Applicants agreed, by words or conduct, to continue processing the

Applications from and after the termination of the License Agreement in order to usurp the rights of LGA to the LGA Inventions and to sell or license them through Cequent in violation of LGA's rights thereto for the purpose of accomplishing that goal through unlawful means.

57.    Cequent and Applicants, in furtherance of the conspiracy or conspiracies and to the damage and detriment of LGA, have utilized the Applications from and after the termination of the License Agreement to delay, inhibit or otherwise injure LGA's rights in the LGA Inventions for the purpose of selling and licensing Cequent's unauthorized products into the market under the guise of having lawful rights thereto.

58.    From and after the termination of the License Agreement, Cequent and other third-party resellers also agreed, combined and conspired with each other to deprive LGA of its rights in the Inventions, copyrights and trademarks by licensing, advertising and selling such Inventions while mismarking these products and materials and falsely representing that these re-sellers and/or Cequent own them or may re-sell them, and that the LGA Inventions belong to, or were designed by these others and/or Cequent.

59.    Cequent, these resellers and the Applicants have jointly and in furtherance of the conspiracy or conspiracies maintained the Applications to the detriment of LGA and more particularly they have made, caused to be made, licensed and sold products identical to the LGA Inventions from and after the termination of the License Agreement, without LGA's consent in derogation of LGA's rights thereto. By such acts Cequent, these resellers and the Applicants have infringed, conspired to infringe and continue to infringe on the LGA Inventions, LGA Trademarks, and LGA Copyrights without just cause or excuse.

60.     LGA has been damaged thereby in various manners, including but not limited to Cequent's continued use of the Applications and the phrase "patents pending" from and after the termination of the License Agreement and Cequent's and these resellers' advertisement, distribution and sale of Inventions as their own, to justify the sales of products, identical or substantially similar with the LGA Inventions, to the public and to enable them to claim from and after the termination of the License Agreement through their distribution channels that they were authorized to do so, thereby preventing or limiting the ability of LGA to establish sales through such channels.

## FOURTH CLAIM FOR RELIEF
**(Intentional Interference with Prospective Economic Advantage Against Cequent)**

61.     The allegations contained in paragraphs 1 through 60 of this Complaint are incorporated by reference herein.

62.      LGA has been involved in the acquisition of the LGA Inventions and the ongoing manufacturing, distribution, licensing and sale thereof both at wholesale and at retail.

63.     Since January 28, 2012, the date at which the License Agreement ceased to be effective, LGA had the valid and reasonable expectation that it would derive future economic benefits from its sales and distribution of LGA Inventions and Sales Media and its use of LGA Trademarks and LGA Copyrights.

64.     As of January 28, 2012, Cequent knew of LGA's business practices and its intentions to sell or license for sale the LGA Inventions to the public.

65.     From and after the termination of the License Agreement, Cequent used untrue, deceptive or misleading statements in their advertising and promotion, with the intent to

purposely cause LGA's current or potential customers not to enter into, perform or continue their prospective business relations with LGA.

66. Cequent's continued use of untrue, deceptive, or misleading statements in its advertisements, with the intention of tortiously interfering with the current or future business relations between LGA and its current and potential customers is causing damage to LGA and is likely to cause irreparable injury.

67. From and after the termination of the License Agreement, Cequent has intentionally and improperly disrupted the relationship between LGA and the market, and between LGA and sales and distribution channels to the public, with the express intent to harm LGA, through wrongful conduct, including but not limited to Cequent's continued processing of the Applications, Cequent's and other resellers' licensing, mismarking and sale of the LGA Inventions from and after the termination of the License Agreement in violation of LGA's rights therein, and in selling and copying LGA Inventions and Sales Media as well as using LGA Trademarks and LGA Copyrights in conjunction therewith from and after the termination of the License Agreement. Cequent's conduct with respect to the foregoing was undertaken wholly without privilege, right, justification, or LGA's consent.

68. Cequent acted maliciously and wantonly in interfering with LGA's prospective business advantage to the damage and detriment of LGA.

**FIFTH CLAIM FOR RELIEF**
**(Direct Infringement of Patents Against Cequent)**

69. The allegations contained in paragraphs 1 through 68 of this Complaint are incorporated by reference herein.

70. Since the termination of the License Agreement on January 28, 2012 and to the present, Cequent has and continues to willfully and knowingly manufacture, make, use, distribute, license, sell and offer for sale, and commercially exploit the LGA Inventions that embody the patented invention without right and in violation of LGA's rights therein, all of the foregoing being an unlawful infringement of LGA's rights in the LGA Inventions relating thereto described in paragraph 9 above.

71. LGA owned the LGA Inventions through the period of Cequent's infringing acts and still owns the patents.

72. Aside from the Defendants' actual knowledge of LGA's patents, by then prior dealings with LGA and these patents and its marking the infringing products with LGA's patent numbers, LGA has complied with the statutory notice requirement of placing a notice of the Letters Patent on the LGA Inventions that it manufactures and licenses.

73. Cequent has had actual knowledge of its infringements of the foregoing LGA Inventions.

74. Such infringements are and at all times have been willful, deliberate, and intentional and with full knowledge of LGA's patents and rights in the LGA Inventions.

75. All of the acts alleged will continue unless enjoined by this Court, and Cequent has damaged LGA by reducing LGA's sales, injuring LGA's reputation and deceiving the public, thus causing Plaintiff LGA irreparable harm, the extent of which is presently unknown. LGA has no adequate remedy at law and injunctive relief, both preliminary and permanent, should be granted.

76.     Cequent should be required to account to LGA for its profits from such infringements from and after the termination of the License Agreement, and LGA should be awarded its damages in an amount adequate to compensate for such infringements, but in no event less than a reasonable royalty for the use made by Cequent as provided by 35 U.S.C. § 284, together with reasonable attorneys' fees pursuant to 35 U.S.C. § 285 and such other damages as may be allowable by law.

### SIXTH CLAIM FOR RELIEF
### (Inducement To Infringe the Method Patents on Silent Hitch Pin, Patent Nos. 6,409,203 and 6,945,550)

77.     The allegations contained in paragraphs 1 through 76 of this Complaint are incorporated by reference herein.

78.     Defendant had actual knowledge of the patents, including its own marking on the infringing products with LGA's patent numbers.

79.     Defendant, through the use of LGA's materials, instructed the users to infringe the patents.

80.     The Defendant knew that the purchaser and user of the Silent Hitch Pin would by that use, infringe the subject patents.

81.     Defendant is liable to Plaintiff for inducing the infringement of the subject patents as provided by 35 U.S.C. §271(b).

### SEVENTH CLAIM FOR RELIEF
### (Trademark Infringement Against Cequent)

82.     The allegations contained in paragraphs 1 through 81 of this Complaint are incorporated by reference herein.

83. LGA is owner of the LGA Trademarks identified as "GearCage®", "GearSpace®", "GearDeck®," "TwinTube®" and "Silent Hitch Pin" both by way of common law rights through direct use and licensed use, and by way of registration at the USPTO under Registration Nos. 4,296,605, 4,296,606, 4,252,371, 4,252,370 and 4,296,604.

84. The LGA's rights in the Trademarks are valid and protectable.

85. On information and belief, Cequent has, since January 28, 2012, infringed on LGA's Trademarks by using and displaying them in commerce, without the permission of LGA, in advertising and packaging for Cequent's Silent Hitch Pin and GearCage products sold or supplied to others in violation of LGA's rights in the LGA Trademarks, all to the detriment and damage of LGA. Such representations by Cequent are either false, misleading or have a tendency to deceive consumers purchasing either product.

86. Cequent's affirmative and material misrepresentations in commercial advertising and promotion from and after the termination of the License Agreement have been disseminated to its customers and potential customers, many, if not all, of whom are also customers or potential customers of LGA, which is likely to cause confusion. The marks are similar, if not identical and are counterfeit marks according to 15 U.S.C. § 1116. Cequent willfully and intentionally infringed on LGA Trademarks and used counterfeit marks in violation of LGA's rights. Such customers have been actually confused and/or deceived by the claims published by Defendant. LGA and Cequent market the same products and use the same marketing channels in Colorado. These claims are likely to further deceive existing and potential customers of the parties by implying deficiencies in the LGA's product that do not exist.

87.     The actions of Cequent, from and after the termination of the License Agreement, have and are likely to continue to injure LGA by confusing the public and by causing LGA to lose customers and sales, resulting in business losses in an amount to be determined at trial and that are presently unknown to LGA, but that are believed to be substantial and are accumulating on an ongoing basis.  By said intentional and willful infringement by Cequent and the use of counterfeit marks, LGA is entitled to recover all of Cequent's profits, LGA's damages, including trebled amount, prejudgment interest, and costs as provided by 15 U.S.C. § 1117 (a), (b) and (c). Further the facts support recovery of LGA's attorneys' fees as the infringement is exceptional.

88.     The actions of Cequent, from and after the termination of the License Agreement, have and will continue to cause LGA substantial harm. LGA has a reasonable interest in its products, including GearCage and Silent Hitch Pin and which interest has been harmed or is subject to harm from the affirmative misrepresentations of Cequent.

89.     The damage to LGA's reputation and goodwill is continuing.  Cequent has caused and continues to cause irreparable harm to LGA for which LGA is entitled to preliminary and permanent injunctive relief.

**EIGHTH CLAIM FOR RELIEF**
**(False Advertising Against Cequent)**

90.     The allegations contained in paragraphs 1 through 89 of this Complaint are incorporated by reference herein.

91.     Cequent made false and misleading representations of fact in connection with the commercial advertising or promotion of its products in commerce from and after the termination of the License Agreement.  The representations consisted of either actual misstatements, partially correct statements, or the failure to disclose certain material facts regarding the LGA Inventions

in its commercial advertisements and promotions is likely to cause confusion or deceive customers and consumers as to the origin, nature, qualities and characteristics of the LGA Inventions.

92.     Cequent's false and misleading representations of fact have injured LGA and caused LGA damage.

93.     Cequent's acts and omissions violate 15 U.S.C. § 1125(a).

94.     Cequent's continued use of false or misleading representations of fact or its continued failure to disclose certain facts regarding Plaintiff's products are causing irreparable injury to LGA, thereby warranting an order granting preliminary and permanent injunctive relief.

**NINTH CLAIM FOR RELIEF**
**(Copyright Infringement Against Cequent)**

95.     The allegations contained in paragraphs 1 through 95 of this Complaint are incorporated by reference herein.

96.     LGA possesses valid copyrights with the LGA Copyrights.

97.     On information and belief, Cequent has, since January 28, 2012, willfully infringed on, misappropriated, and copied protectable elements of LGA's copyrights, images and written manuals developed by LGA for its GearCage invention, registered under United States Copyright Office No. TXU1-847-969, with the intent to commercially exploit these works to which Cequent has no proprietary rights.   From and after the termination of the License Agreement, Cequent has published, distributed and used LGA's copyrighted materials, without the permission of LGA, in advertising and packaging for Cequent's products sold or supplied to others in violation of LGA's rights, all to the detriment and damage of LGA.

98.     By reason of these willful infringements of copyrights, LGA has sustained injury, loss and damage to its ownership rights and Defendant has unlawfully, unfairly and wrongfully derived and will continue to derive income from these infringing acts.

99.     For the infringements, LGA seeks its damages and Cequent's profits, or applicable statutory damages as provided by 17 U.S.C. § 504 and cost and attorneys' fees under 17 U.S.C. § 505.

## TENTH CLAIM FOR RELIEF
### (Violation of 17 U.S.C. §1202 – False Copyright Management Information and Removal of LGA's Copyright Management Information)

100.    The allegations contained in paragraphs 1 through 99 of this Complaint are incorporated by reference herein.  Defendant, individually or in concert with others, has intentionally altered or removed LGA's copyright management information on the user manuals and other materials associated with LGA's patented products.

101.    Defendant, individually or in concert with others, has intentionally provided false Copyright Management Information in connection with LGA's copyrighted materials, including claiming for itself the copyright to the material, all with the intent to deceive and to conceal the infringement, or to enable or facilitate the infringement of LGA's rights.

102.    Defendant is liable for such damages as allowed by law, including, in the alternative, damages pursuant to 17 U.S.C. §1202(c)(2) (Profits), or 17 U.S.C. §1202(c)(3) (Statutory Damages).

## ELEVENTH CLAIM FOR RELIEF
### (Unfair Competition)

103.    The allegations contained in paragraphs 1 through 102 of this Complaint are incorporated by reference herein.

104.     From and after the termination of the License Agreement, Cequent copied LGA products and marketed them for sale as its own.

105.     Cequent's conduct was and is likely to deceive the public and cause difficulties in distinguishing between LGA's and Cequent's products.

106.     LGA has suffered damages to its goodwill because Cequent copied LGA's products and sales media and entered defective products into the marketplace.

107.     Cequent's copying also restrained LGA's ability to grow the market for its goods and created barriers to entry.

108.     LGA incurred damages as a direct result of Cequent's unfair competition.

## TWELFTH CLAIM FOR RELIEF
### (Reverse Passing Off)

109.     The allegations contained in paragraphs 1 through 108 of this Complaint are incorporated by reference herein.

110.     The LGA Inventions marketed, licensed and sold by Cequent from and after the termination of the License Agreement originated with LGA.  Cequent acquired them pursuant to the License Agreement, but continued and continues to market and/or license the LGA Inventions for sale under its own name or under other re-sellers' names after the License terminated.

111.     Cequent falsely designated the origin of products it sold to the public and represented them to the public as its own from and after the termination of the License Agreement.

112.     Cequent's false designation of the origin of its products was likely to cause customer confusion.

113. LGA has been harmed by Cequent's false designation of the origin of the LGA Inventions it sold to the public, including but not limited to damage to LGA's goodwill from Defendants' sale of defective products identical to LGA's Inventions.

## VI.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff Let's Go Aero, Inc. requests that the Court:

a.    enter an Order containing the Declarations set forth above;

b.    award LGA compensatory damages against the Defendant for the amounts proven at trial and to the fullest extent provided by law;

c.    order Defendant to account for all sales, purchases, revenues and profits derived from its improper use of the LGA Inventions from and after the termination of the License Agreement and to disgorge the same forthwith or, alternatively, for judgment in the amount thereof;

d.    award LGA its attorneys' fees, costs and exemplary, exceptional or treble damages to the fullest extent provided by law, including 35 U.S.C. §§ 284, 285, 15 U.S.C. § 1117 and 17 U.S.C. § 505.

e.    issue preliminary and permanent injunctions to Cequent, and affiliated officers, directors, representatives, successors and assigns and all those in active concert or in active participation with them which:

i.    enjoins them from committing further acts of infringement of the LGA Inventions, LGA Trademarks or LGA Copyrights and from aiding or abetting or inducing in any way the infringement thereof;

ii.      require them to account to LGA for all revenues, gains and profits derived by them from the described acts from and after the termination of the License Agreement;

iii.      requires them to pay to LGA all costs of this action and LGA's reasonable attorneys' fees pursuant to the provisions of 35 U.S.C. § 285, 15 U.S.C. § 1117 and 17 U.S.C. § 505 because of the calculated and deliberate nature of the infringing activities sought to be enjoined hereby;

iv.      enjoin Cequent and the Applicants from further prosecuting the Applications and from taking any further actions to utilize the LGA Inventions, LGA Trademarks, or LGA Copyrights without LGA's prior and express consent;

f.      order Cequent to undertake a corrective advertising campaign to rectify the confusion, deception, or misrepresentations caused by its illegal actions.

g.      awards treble damages actually sustained and the costs of suit to Plaintiff, including reasonable expert expenses and attorneys' fees, with interest as provided by law; and

h.      grant LGA such other and further relief as may be required by law or equity, including ancillary relief.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

Dated:   July 31, 2014.

Respectfully submitted,

SILVER & DeBOSKEY,
A Professional Corporation

By:   */s/Thomas M. Haskins III*
      Thomas M. Haskins III (#17651)
      Martin D. Beier (#20188)
      Silver & DeBoskey P.C.
      1801 York Street
      Denver, CO 80206
      (303) 399-3000
      haskinst@s-d.com
      beierm@s-d.com

DENNIS W. HARTLEY, P.C.

By:   */s/Dennis W. Hartley*
      Dennis W. Hartley (#0788)
      Dennis W. Hartley, P.C.
      422 E. Vermijo Ave.
      Colorado Springs, CO 80903
      Dennis.hartley@hartleyslaw.com

ATTORNEYS FOR PLAINTIFF

EN9099