IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:14-cv-01600-MEH

Let's Go Aero, Inc.,

        Plaintiff,

v.

Cequent Performance Products, Inc. et al.,

        Defendants.

## CEQUENT'S MOTION TO COMPEL ARBITRATION

In accordance with the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, Cequent Performance Products, Inc. moves the Court to compel arbitration and to administratively close this case or, in the alternative, to stay proceedings under 9 U.S.C. § 3 pending the outcome of arbitration.

## **Introduction**

Let's Go Aero, Inc. ("LGA") and Cequent Performance Products, Inc. ("Cequent") previously resolved litigation in this Court over Cequent's sales of certain cargo management products, to which LGA claimed intellectual property ("IP") rights. In settling their dispute, the parties agreed – in a broad arbitration clause obtained from the American Arbitration Association – that any future dispute over those products or LGA's purported IP rights to those products must be resolved through arbitration.

LGA has now breached the arbitration clause by filing this lawsuit, again asserting its purported IP rights against Cequent's alleged sales of the same cargo products that LGA

{5116573:}

challenged previously. The arbitration clause applies to this case with full force, and the Court should enforce it by compelling arbitration.

## Facts

I. **Prior License**

The parties' rocky relationship began in January 2008 when they entered into a license agreement (the "License") that permitted Cequent to sell certain cargo-management products over which LGA claimed to have enforceable IP rights, including patent rights.[1] In return for the purportedly exclusive license, Cequent paid LGA over $586,000. (*See* Compl. ¶ 3 in *Cequent v. Let's Go Aero*, D. Colo., Case No. 1:10-cv-02921-MSK-CBS ("*LGA I*").)[2] Those products, which were identified in Exhibit 1 to the License are the: "Pixie," "Silent Hitch Pin," "Gear Cage," "Gear Deck," "Gear Space," "Twin Tube," "Juice Box," and "Gear Bed." (collectively, the "Products"). (*See* Ex. 1 to License.) The Products are vehicle cargo products. The "silent hitch pin" is a spring-loaded pin that holds a rear vehicle hitch together without rattling, the "Pixie" is a hitch-mounted bike rack, and the other products hitch to the back of vehicles to provide additional cargo space. The photograph below of the GearCage from LGA's website is illustrative of the technology at issue.

---

[1] A true copy of the License is attached as Exhibit A.
[2] A true copy of the Complaint that Cequent filed in *LGA I* is attached as Exhibit B.

{5116573:}          2


GearCage

(Captured from www.letsgoaero.com/GearCage-SP-6-p/gcsp-6htm on Sept. 17, 2014.)

Cequent later discovered that it received nothing in return for its cash payments because LGA had no patent rights to most, if not all, of the products covered by the License due to LGA's failure to pay patent maintenance fees (resulting in loss of patent rights), its misrepresentation of the scope of its patents or patent applications, and other reasons. (*LGA I* Compl. ¶ 4-5.) Thus, anyone could manufacture and sell the Products without having to pay LGA, depriving Cequent of the benefit of its bargain.

## II.   First Lawsuit and Settlement with Arbitration Clause

When LGA refused to acknowledge or remedy its breaches of the License, Cequent filed the *LGA I* case in this Court.[3] LGA counterclaimed in *LGA I*, alleging that Cequent's alleged sales of the Products violated LGA's purported IP rights. (*See LGA I* Am. Countercl. ¶ 113.)[4] According to LGA's amended counterclaim in *LGA I*, the Products were covered by patents, patent applications, and registered trademarks. (*See LGA I* Am. Countercl. ¶ 113.)

---

[3] Although Cequent is headquartered in Michigan, it sued in Colorado to comply with the License's forum selection clause. (*See* License ¶ 10.)

[4] A true copy of LGA's Amended Counterclaim in *LGA I* is attached as Exhibit C.

Due to the efforts of Magistrate Judge Craig Shaffer mediating that dispute, the parties settled under a January 28, 2012, "Settlement Agreement and Release" (the "Settlement").[5] As part of the Settlement, the parties agreed that, if there was any future dispute over the Products or LGA's purported IP rights, the parties would be required to try and negotiate a settlement and, if unable to amicably resolve the matter, resolve the matter through arbitration. The arbitration clause states:

> In the event of any dispute, claim, question, or disagreement arising from or relating to this Agreement or the breach thereof, the Parties shall use their best efforts to settle the dispute, claim, question, or disagreement. To this effect, they shall consult and negotiate with each other in good faith and, recognizing their mutual interests, attempt to reach a just and equitable solution satisfactory to both parties.
>
> If they do not reach such solution within a period of 60 days, then, upon notice by either party to the other, all disputes, claims, questions, or differences shall be finally settled by arbitration administered by the American Arbitration Association in accordance with the provisions of its Commercial Arbitration Rules. Venue for the arbitration proceedings shall be in Chicago, Illinois, and the arbitration shall be conducted by a single neutral arbitrator.

(Settlement ¶ 23.) The Settlement also terminated the License. (*Id.* ¶ 1.) According to LGA here, that termination of the License ended Cequent's right to sell the Products and, therefore, makes Cequent's alleged ongoing sales of one or more of the Products actionable in tort. (2d Am. Compl. ¶ 11-16.)

---

[5] A true copy of the Settlement is attached as Exhibit D.

**III.   This Lawsuit**

On June 6, 2014, LGA filed this lawsuit ("*LGA II*"), again claiming that Cequent's sales of at least some of the Products violates LGA's purported IP rights. (*See* Compl. ¶ 8-10, ECF # 1.) The same lawyer who represented LGA in *LGA I* and negotiated the Settlement on its behalf, Thomas Haskins, represents LGA here.

On June 23, 2014, LGA amended its complaint to add U-Haul as a defendant. (*See* Am. Compl., ECF # 11.)

On August 7, 2014, LGA again amended its complaint. (*See* 2d Am. Compl., ECF # 15.) In the second amended complaint, LGA dropped U-Haul as a defendant and added two counts. The two new counts rely on the same underlying facts as were presented in the previous complaints.

LGA has challenged Cequent's sales of the same products that it challenged in *LGA I*, namely the "Silent Hitch Pin," "Pixie," and "GearCage." (*Compare* Am. Countercl. ¶ 113 *with* 2d Am. Compl. ¶¶ 12-13.) And LGA asserts the same patents and patent applications that it asserted in *LGA I*. (*Id.*)[6]

---

[6] The majority of LGA's claims for relief do not specify which patents, trademark, or copyrights it is accusing Cequent of infringing which, but for the arbitration clause, would subject the complaint to a Rule 12(b)(6) motion. (*See* 2d Am. Compl., Claims for Relief 1-5, 8, and 10-12.) Nevertheless, all of the patents included in its allegations were included in the License, which the parties terminated as part of the Settlement. U.S. Patent Nos. 8,079,613 and 8,079,419 issued after the commencement of *LGA I* but before the Effective Date of the Settlement. These patents issued from applications (U.S. App. Nos. 11/382,917 and 10/711,961, respectively) that were part of the parties' License. (*See LGA I* Am. Countercl. ¶ 113-114 (listing patents, patent applications, and trademarks that were part of the parties' License).)

Although LGA uses various names to describe its causes of action such as "Declaratory Judgment," "Unjust Enrichment and Accounting," and "Civil Conspiracy,"[7] the gist of each claim is the same: that Cequent's alleged sale and marketing of the Products after the Settlement terminated the License violates LGA's purported IP rights. Because each of LGA's claims against Cequent arise from or relate to the Settlement, these claims must be arbitrated.

### Law and Argument

**I. Arbitrability Depends On the Breadth Of The Arbitration Clause**

The Supreme Court has recognized the "liberal federal policy favoring arbitration agreements." *See Green Tree Fin. Corp. v. Randolph*, 531 US 79, 91 (2000). "Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U. S. 1, 24-25 (1983).

Whether a case is arbitrable is a question of law for the court. *Newmont U.S.A. Ltd. v. Ins. Co. of N. Am.*, 615 F.3d 1268, 1274 (10th Cir. 2010).

"[I]n deciding if a dispute is arbitrable, a court must initially determine whether the arbitration provision is broad or narrow." *Newmont*, 615 F.3d at 1274, *citing Cummings v. FedEx Ground Package Sys., Inc.*, 404 F.3d 1258, 1261 (10th Cir. 2005).

---

[7] Many, if not all, of these alleged claims for relief have no basis in the law or are improperly pled. Cequent does not waive its right to challenge the propriety of the claims for relief contained in the complaint. However, at this stage of the litigation, such a challenge is not yet appropriate. *See Lamkin v. Morinda Props. Weight Parcel, LLC*, 440 Fed. Appx. 604, 607-08 (10th Cir. 2011) (moving to compel arbitration and for stay in lieu of answer or motion to dismiss complaint is procedurally correct).

Courts unanimously agree that an arbitration clause, such as the present one, covering any disputes "arising from or relating to" to agreement is broad. *See e.g., Cummings*, 404 F.3d at 1262; *Newmont*, 615 F.3d at 1274-1275; *Daugherty v. Encana Oil & Gas (USA), Inc.*, No. 10-cv-02272-WJM-KLM, at *5 (D. Colo. July 15, 2011); *GATX Mgmt. Servs., LLC v. Weakland*, 171 F. Supp. 2d 1159, 1163 (D. Colo. 2001). Interpreting the same "arising out of or relating to" language at issue here, this Court has ruled that such language "covers not only those issues arising out of the [] contract, but even those issues with any connection to the contract or to the relationship between the parties." *GATX*, 171 F. Supp. 2d at 1163. For such clauses, this Court has held, the "strong presumption favoring arbitrability 'applies with even greater force.'" *Id.*

Consistent with the judicial preference for arbitration, "[w]here the arbitration clause is broad, there arises a presumption of arbitrability and arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it." *Cummings*, 404 F.3d at 1261.

"[A] collateral issue . . . is somehow connected to the main agreement that contains the arbitration clause." *Burlington Northern and Santa Fe Ry. Co. v. PSO.*, 636 F. 3d 562, 569 (10th Cir. 2010). "If the allegations underlying the claims touch matters covered by the parties' [arbitration agreement], then those claims must be arbitrated, whatever the legal labels attached to them." *Id* at 570, quoting *Chelsea Family Pharmacy, PLLC v. Medco Health Solutions, Inc.*, 567 F.3d 1191, 1198 (10th Cir. 2009).

## II. This Dispute Is Entirely Covered By The Broad Arbitration Clause

### A. The Arbitration Clause Is Broad

The arbitration clause here is broad as a matter of law, as it applies to "any dispute, claim, question, or disagreement *arising from or relating to* this Agreement or the breach thereof." Settlement ¶ 23 (emphasis added); *see Newmont,* 615 F.3d at 1274-75 & no.5 ("Generally, when an arbitration provision provides for any dispute 'arising out of' a particular contract, the provision is construed broadly to suggest that a given dispute is arbitrable."); *see also Rains v. Foundation Health Sys. Life & Health,* 23 P.3d 1249, 1252 (Colo. Ct. App. 2001) ("The scope of arbitration clauses phrased in this language [referring to 'arising out of or relating to' language] is broad and inclusive, rather than narrow and exclusive. Such broad, unrestricted clauses make the 'strong presumption favoring arbitration' [apply] with even greater force.").

Indeed, the clause is broader than the "arising from" language declared broad by the Tenth Circuit in *Newmont* because it adds the expansive "or relating to" language. *See Newmont,* 615 F.3d at 1274-75 (holding "arising out of" is broad); *GATX,* 171 F. Supp. 2d at 1163 (holding "related to" language is "undoubtedly" broad).

In fact, the parties used the "NEG 1" clause provided by the American Arbitration Association that contains standard broad language that "consistently receive[s] judicial support" and "makes clear that all disputes are arbitrable . . . [to] minimize[] dilatory

{5116573:} 8

court actions to avoid the arbitration process." (*See* AAA's Drafting Dispute Resolution Clauses, A Practical Guide at p. 10-12, NEG 1.)[8]

The arbitration clause is broad and, therefore, there is a presumption of arbitrability, including for collateral matters.

### B. This Dispute Is Within The Scope Of The Broad Arbitration Clause

Each of LGA's claims against Cequent arises out of or relates to the Settlement. The Settlement resolved a dispute between the parties regarding Cequent's sales of the Products and alleged violations of LGA's IP rights to those products. (*See LGA I* Am. Countercl. ¶ 113-114.) This dispute is the same type of dispute between the same parties over the same subject matter: a dispute over Cequent's sales of the Products and LGA's alleged IP rights to them. Therefore, this dispute arises out of and relates to the Settlement on that basis alone.

That LGA crafted its allegations to target only alleged conduct by Cequent that occurred *after* the execution of the Settlement does not push this case beyond the scope of the arbitration clause. (*See* 2d Am. Compl. ¶ 44 (alleging that Cequent violated LGA IP rights by "using them to market and sell LGA's products as its own following the January 28, 2012 termination of the License Agreement").) While Paragraph 6 of the Settlement specifically excludes from the releases in Paragraphs 1, 4, and 5 any unlawful use of intellectual property "occurring after the Effective Date" of the Agreement, that paragraph tellingly does not place any limitation on the arbitration clause in Paragraph 23. And the

---

[8] A true copy of this AAA publication is attached as Exhibit E.

arbitration clause itself does not contain any limit as to future disputes regarding claims of unlawful use of intellectual property. On the contrary, limiting its scope to disputes over pre-settlement conduct would make no sense as the Settlement's releases preclude any disputes over pre-settlement conduct. Thus, the broad arbitration clause applies to LGA's action for relief from Cequent's alleged post-settlement sales of the Products and the alleged use of LGA's intellectual property in connection with those sales.

This dispute is within the scope of the arbitration clause for another reason: LGA premises all of its claims on the termination of the License. According to LGA, the Settlement terminated the License effective January 28, 2012, and ended Cequent's right to sell and market the Products, including the Pixie Bicycle Rack, Silent Hitch Pin, and GearCage. (2d Am. Compl. ¶ 11-15.) Every one of LGA's claims in its second amended complaint is premised on its allegations that Cequent's continuing to sell the Products, with associated trademarks and allegedly copyrighted brochures and marketing materials, after termination of the License is tortious. (*See, e.g.,* 2d Am. Compl. ¶ 43 ("LGA conferred a benefit when Cequent retained the LGA Inventions, LGA Copyrights, and LGA Trademarks and Sales Media acquired from LGA pursuant to the Nondisclosure and License Agreements after the voluntary agreement to terminate the License Agreement on January 28, 2012.").) Thus, every claim arises out of and relates to the Settlement because each is premised on the termination of the License caused by the Settlement.

LGA's allegations about the silent hitch pin product further illustrate how its claims arise out of and relate to the Settlement. LGA alleges that Cequent is liable to LGA

for selling Silent Hitch Pin products beyond a 23,300 unit "phase-out" permitted by the Settlement (2d Am. Compl. ¶ 24-26, 30, 36; *see* Settlement ¶ 2, Ex. 1 (permitting phase out of 25,792 silent hitch pins).) There can be no dispute that these claims arise out of and relate to the Settlement, especially as LGA's own allegations have put the "phase out" provision of the Settlement – which is misreads as allowing 23,300 units, instead of 25,792 units – directly at issue.

Consequently, the Court should compel arbitration and administratively close this proceeding or, alternatively, stay the proceedings under 9 U.S.C. § 3. *See Elliott v. Essex Motors, LLC,* No. 12-cv-01078, 2013 WL 1117211, at *3 (D. Colo. Mar. 10, 2013) (compelling arbitration and "administratively closing" case under D.C.COLO.LCivR. 41.2).

### Conclusion

Based on the foregoing, Cequent's motion to compel arbitration should be granted and the proceedings stayed.

Respectfully submitted,

Dated:  September 17, 2014

Andrew J. Petrie
BALLARD SPAHR LLP
1225 17th Street, Suite 2300
Denver, Colorado 80202-5596
petriea@ballardspahr.com

 s/ David B. Cupar
David B. Cupar (OH 0071622)
Matthew J. Cavanagh (OH 0079522)
MCDONALD HOPKINS LLC
600 Superior Avenue, East, Ste. 2100
Cleveland, Ohio 44114
t 216.348.5400 | f 216.348.5474
dcupar@mcdonaldhopkins.com
mcavanagh@mcdonaldhopkins.com

*Counsel for*
*Cequent Performance Products, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on September 17, 2014, I electronically filed the foregoing with the Clerk of this Court using the CM/ECF system, which will electronically mail notice to the following:

Thomas Haskins
SILVER & DEBOSKEY
1801 York Street
Denver, Colorado 80206
t 303.399.3000
f 303.399.2650
thaskins@s-d.com

*Counsel for Plaintiff*

    s/ David B. Cupar
*Counsel for*
*Cequent Performance Products, Inc.*