IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-1600-RM-MEH

LET'S GO AERO, INC., a Colorado corporation,

    Plaintiff,

v.

CEQUENT PERFORMANCE PRODUCTS, INC.
f/k/a CEQUENT TOWING PRODUCTS, INC.,
a Delaware corporation,

    Defendant.

## PLAINTIFF LET'S GO AERO, INC.'S RESPONSE IN OPPOSITION TO CEQUENT'S MOTION TO COMPEL ARBITRATION [DOC. #29]

Plaintiff, Let's Go Aero, Inc., ("LGA") by its undersigned counsel, submits this response to Cequent's Motion to Compel Arbitration [Doc. #29] and in opposition thereto states:

### INTRODUCTION.

Cequent moves for an order compelling LGA to arbitrate the claims asserted in this case in Chicago, under an agreement signed by LGA and Cequent to resolve an earlier lawsuit that was also filed in this Court ("Settlement Agreement," attached as Exhibit A). LGA will not waste this court's time correcting Cequent's inaccurate characterizations of the prior lawsuit, but notes that none of the factual allegations in the Second Amended Complaint ("SAC"), the operative pleading in this case, cover any of the conduct at issue in the prior litigation. Indeed, the SAC is explicit that the misconduct alleged in this case occurred *after* the parties settled the prior lawsuit on January 28 2012. Thus, Cequent's suggestion that LGA is re-litigating the same sales and same infringing conduct as before lacks any basis.

None of LGA's claims relate to either breach or non-performance of the Settlement Agreement. Moreover, judicial determination of LGA's claims does not depend on any element of the Settlement Agreement for resolution. Indeed, Cequent's belated demand for arbitration appears to be no more than a stalling tactic. Cequent has taken no other action within its power to enforce the dispute resolution clause on which its Motion is entirely based — having never "consult[ed] and negotiate[d]" with LGA through mediation (Settlement Agreement at ¶ 23) nor by initiating an arbitration proceeding at any time. Thus, Cequent's Motion should be denied for these and other reasons shown below.

**ARGUMENT**

Cequent's Motion must be denied both procedurally and substantively because this Court would not be the proper venue to grant Cequent's Motion, and yet there is no doubt this Court has subject matter jurisdiction to deny it because the arbitration provision does not apply here. That there are common parties, intellectual property rights and products between the two lawsuits is not enough to meet Cequent's burden to show that the current dispute arises from or relates to the Settlement Agreement or a breach thereof. Consequently, Cequent's Motion should be denied.

**I.    The Law Governing The Merits Of Cequent's Motion.**

Cequent's discussion of the governing law on the merits is woefully incomplete. According to Cequent, the Court's task is no more than determining whether the arbitration provision is "broad" or "narrow" and then compelling arbitration if the provision is deemed "broad." However, the controlling law is more nuanced, and requires Cequent's Motion be denied.

Initially, Cequent "has the burden of establishing that the matter is subject to arbitration." *GATX Management Serv., LLC v. Weakland*, 171 F.Supp.2d 1159, 1162 (D. Colo. 2001). Whether the parties agreed to arbitrate and the scope of that agreement are determined under contract principles, and in making that determination, "a federal court relies on state law principles of contract formation" and interpretation. *Daugherty v. Encana Oil & Gas (USA), Inc.*, 2011 WL 2791338 at 3 (D. Colo. 2011) (unreported). Under Colorado law, the court is required "to interpret a contract in a manner that effectuates the manifest intention of the parties at the time the contract was signed[.]" and "looks to the language of the contract to determine the intention of the parties." *Id.* at 12.

Before a court can compel arbitration, it must "first examine 'the scope of that agreement and then determine whether [plaintiffs] claims fall within its scope.'" *Cummings v. FedEx Ground Package System, Inc.*, 404 F.3d 1258, 1261 (10th Cir. 2005) (quoting *Nat'l Amer. Ins. Co. v. SCOR Reinsurance Co.*, 362 F.3d 1288, 1290 (10th Cir. 2004)). Notably, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Id.* at 1262 (*quoting AT&T Techs., Inc. v. Comm. Workers of Amer.*, 475 U.S. 643, 648 (1986)).

The *Cummings* court held that to determine if a particular dispute falls in the scope of an agreement's arbitration clause, courts must undertake a three-part inquiry:

> First, recognizing there is some range in the breadth of arbitration clauses, a court should classify the particular clause as either broad or narrow. Next, if reviewing a narrow clause, the Court must determine whether the dispute is over an issue that is on its face within the purview of the clause, or over a collateral issue that is somehow connected to the main agreement that contains the arbitration clause. *Where the arbitration clause is narrow, a collateral matter will generally be ruled beyond its purview.* Where the arbitration clause is broad, there arises a presumption of arbitrability and arbitration of even a collateral matter will be

> ordered if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it.

*Id*. at 1261 (emphasis in original). The *Cummings* court instructs that "[w]hen an arbitration clause is narrowly drawn, the policy in favor of arbitration does not have the strong effect here that it would have if we were construing a broad arbitration clause." *Id*. at 1262 (quotation omitted).

As subsequently explained by the Tenth Circuit, "[t]o determine the breadth of an arbitration clause, we ask if 'the parties clearly manifested an intent to narrowly limit arbitration to specific disputes' that might arise between them." *Chelsea Family Pharmacy, PLLC v. Medco Health Solutions, Inc.*, 567 F.3d 1191, 1196 (10th Cir. 2009) (quoting *Cummings* at 1262). That Court further instructs, "[u]nder Colorado law, in determining the meaning of a contract, courts must analyze the entire instrument and not view provisions or phrases in isolation." *Newmont U.S.A. Ltd. v. Ins. Co. of North Amer.*, 613 F.3d 1268, 1275 n.6. Furthermore, where the Court is asked to render its decision on the pleadings, as Cequent does here, the Court must accept LGA's factual averments in its complaint as true. *See generally Riley Manuf. Co., Inc. v. Anchor Glass Container Corp.*, 157 F.3d 775, 779 (10th Cir. 1998). As summarized by the First Circuit, "[t]he Federal Arbitration Act favors arbitration; but only as to what the parties have *agreed* to arbitrate." *Fit Tech, Inc. v. Bally Total Fitness Holding Corp*., 374 F.3d 1, 11 (1st Cir. 2004) (emphasis in original).

**II.     Cequent's Motion Fails Because The Arbitration Provision Is Narrow And Confined To Disputes About The Parties' Performance Under The Settlement Agreement Alone.**

Subject also to the venue objection below, Cequent's Motion should be denied on the merits because the arbitration provision in the Settlement Agreement does not apply here. A

review of the Settlement Agreement and the SAC unequivocally establish that the claims here do not arise from or relate to the Settlement Agreement.

The arbitration clause deals with disputes that might occur in the parties' performance of the Settlement Agreement. That agreement affirmatively required that Cequent pay money to phase out its inventory (¶2), that each party release the other for past conduct (¶¶ 4 & 5), that the parties use their best efforts to get bankruptcy court approval (¶ 3), that Cequent deliver a release by TriMas Corp. following bankruptcy court approval (¶ 4), that LGA was to remove and not republish statements it had made on a website (¶ 7), that neither party was to defame, disparage, or criticize the other for conduct occurring before the settlement's effective date (¶ 7), and that the parties were to file a dismissal of the prior lawsuit (¶ 8). These are the obligations of the Settlement Agreement which the parties agreed to arbitrate if disputes arose in their performance.

By contrast, the claims of this case have nothing to do with the Settlement Agreement obligations. LGA does not assert any claims for breach of the Settlement Agreement. LGA does not assert any claims for breach of the License Agreement that was concluded by the Settlement Agreement. Furthermore, LGA's claims are temporally distinct from the allegations in the prior lawsuit because all claims explicitly involve actions by Cequent that occurred after the LGA-Cequent contractual relationship ended.

Most importantly, *LGA asserts tortious claims of infringement of its intellectual property rights that would exist even if LGA and Cequent had never transacted business before.* These claims are founded upon law promoting public policy duties against infringement of legal intellectual property rights that are generally owed to others, outside of any contractual relationship.

The unambiguous text of the Settlement Agreement specifically shows that the parties simply agreed to arbitrate disputes "arising from or relating to *this Agreement* or the breach thereof[.]" Ex. A at ¶ 23 (emphasis added). Ironically, from its first page and repeated thereafter, Cequent's Motion insists, instead, that "the parties agreed . . . that any future dispute over [LGA's] products or LGA's purported IP rights to those products must be resolved through arbitration." However, had the parties truly wanted to broadly arbitrate all aspects of their relationship, including any future dispute over LGA's products or LGA's IP rights as Cequent now argues, it would have been child's play for them to do so. Instead, the arbitration provision never metions either LGA's products or LGA's intellectual property rights. Thus, Cequent's attempt to rewrite the agreement to what Cequent now wants it to say must be rejected.

Similarly, Cequent's argument that the arbitration provision was "obtained from the American Arbitration Association" ("AAA") and its further suggestion that the parties intentionally "used the 'NEG 1' clause provided by" the AAA purportedly because that clause has been interpreted to "make clear that all disputes are arbitrable" (Motion at 1, 8), lacks any factual support. Cequent cites no evidence that the parties ever discussed or considered selecting a specific clause from the AAA because of prior construction afforded to that clause, and any *parol* evidence of such intent (were it to exist) must be disregarded.[1]

Cequent wrongly argues that courts have "unanimously" agreed that an arbitration clause using the term "arising from or relating to" an agreement is broad. Cequent Motion at 7. However, in multiple cases where these terms were used, courts have found the arbitration

---

[1] Further, the Practical Guide attached to Cequent's Motion is misapplied. The section of the Guide that Cequent quotes is discussing an arbitration clause that is worded differently than the one that the parties actually used here. Thus, this Guide carries no persuasive weight.

provision to be narrow. Indeed, in the Tenth Circuit's *Chelsea* ruling, the agreement there provided that the parties would arbitrate disputes "arising out of or relating to payments to Chelsea by Medco." *Chelsea*, 567 F.3d at 1194. Nonetheless, the Tenth Circuit held that the parties manifested an intent to narrowly limit arbitration to specific types of disputes and thus, it "consider[ed] the clause at issue to be narrow in scope." *Id*. at 1197. Accordingly, *Chelsea* shows there is no "unanimity" on the construction of this phrase, and that its existence here is not dispositive.

In fact, Cequent's leap to label the arbitration provision as "broad" by arguing that the phrase in that provision ("arising from and related to") has been construed to be broad, puts the cart before the horse by ignoring the intended, specified target of the arbitration clause: the "Agreement or breach thereof[.]" Because the "Agreement" referred to in the arbitration clause is a defined term at the very beginning of the contract, the arbitration language is expressly limited to disputes about that Agreement, not disputes about the relationship between the parties in general. Thus, the focus here should be on the intended target of the arbitration provision — the defined term "Agreement" — and if the claims in the SAC are not "Agreement"-based (and they are not), then the arbitration provision does not apply. *See Fit Tech,* 374 F.3d at 10 (denying a motion to compel because the arbitration provision appeared only in one of two agreements, and the provision in one "refers to disputes arising under or related to *that agreement*") (emphasis in original). The intent of the parties and the context of the parties' agreement controls, not the slavish application of a label to a phrase.

Like the provision in *Chelsea*, paragraph 23 of the Settlement Agreement here should be construed as narrow. The Court in *Chelsea* recognized that an arbitration clause may be narrow

even if it "does not explicitly exclude all other disputes from arbitration as did that [provision] in *Cummings*[,]" because there was an exclusion elsewhere in the agreement. *Chelsea*, 567 F.3d at 1196 (discussing exclusion of matters such as termination of the agreement). Because Colorado law requires this Court to view the Settlement Agreement in its entirety, and not construe its provisions in isolation (as Cequent would have this Court do), this Court should interpret ¶ 23 in light of the parties' direct expression of limitation in ¶ 6 where they excluded "any claim, demand, action, or cause of action arising from the unlawful use of the other's intellectual property occurring after the Effective Date."[2] Not only did the parties use identical language ("arising from") in the two paragraphs, but it is evident from the expressed limit in ¶ 6, that arbitration in ¶ 23 must involve disputes over the "Agreement." Read together, these provisions show that the intent was to narrowly limit arbitration to disputes arising out of the performance of the Settlement Agreement and Release, and nothing more.[3]

Cequent argues that it would make no sense to limit the arbitration clause "to disputes over pre-settlement conduct" because the Settlement Agreement's "releases preclude any disputes over pre-settlement conduct." Cequent Motion at 10. This argument is misdirection.

---

[2] Cequent argues that although ¶ 6 of the Settlement Agreement specifically excludes any unlawful use of intellectual property occurring after the effective date of the agreement, this paragraph only limits the release provided, and purportedly "does not place any limitation on the arbitration clause in Paragraph 23." Cequent Motion at 9. Cequent's argument that ¶ 23 should be construed separately from the limiting language in ¶ 6 ignores governing Colorado law that "[t]he intent of the parties should be determined from **the entire contract**, and effect must be given to every provision if possible." *Lawrence Street Partners, Ltd. v. Lawrence Street Venturers*, 786 P.2d 508, 510 (Colo. App. 1989) (emphasis added).

[3] Nor is there any indication that LGA and Cequent ever intended to arbitrate tort, versus contract, claims. LGA's claims here are all either tort or statutory-based. As noted by the Court in *Dusold* (cited later), "when a dispute is not contractual but tortious, courts have shown an increasing reluctance to subject [tort] claims to contractual restraints on judicial resolution." *Id.*, 807 P. 2d 526, 530.

8

LGA does not argue that the arbitration provision involves "disputes over pre-settlement conduct," but instead that it involves, as it says, disputes over the "Agreement, or breach thereof." The arbitration clause deals with the disputes that might occur, post-settlement, but only in the parties' performance of the specific affirmative obligations of the Settlement Agreement. None of those obligations are mentioned in LGA's claims. Those obligations are the *only* ones that the parties agree to arbitrate if disputes arose during their performance. Nowhere in the Settlement Agreement did the parties agree that they would arbitrate the unlawful use of the other's intellectual property. To the contrary, as shown by ¶ 6, that conduct was expressly carved out of the Settlement Agreement. The present suit is a dispute over Ceqent's unlawful use of LGA's intellectual property. Therefore, it is not covered by the Settlement Agreement, and not subject to arbitration.

Cequent next argues that the Court must construe the arbitration clause as covering this dispute because LGA purportedly "premises all of its claims on the termination of the License" which occurred via the Settlement Agreement. This is a mischaracterization of LGA's claims.

Although the prior license is mentioned in the allegations, in passing, because it explains how Cequent obtained LGA's secret and/or protected information, none of the relief sought in the SAC involves a breach of the License Agreement. In fact, the Settlement Agreement merely restored the parties to the position that they were in *before* the License Agreement. Cequent's argument fails because LGA does *not* have to prove, as part of its infringement case, that the License Agreement was terminated. To the contrary, LGA only needs to establish "(1) that it owns a valid copyright, and (2) that the defendant copied protectable elements of the copyrighted work." *Paycomm Payroll LLC v. Richison*, 758 F.3d 1198, 1204 (10th Cir. 2014); *see also*

*Donchez v. Coors Brewing Co.*, 392 F.3d 1211, 1219 (10th Cir. 2004) (describing elements of trademark infringement as plaintiff's proof of a "protectable interest in its mark, the defendants' use of that mark in commerce, and the likelihood of consumer confusion"). Because LGA does not have to prove that the License Agreement ever existed or was terminated to prevail on any of its claims, it simply cannot be said that LGA has "premised" its claims on the termination of the License.

Similarly, Cequent argues that LGA's allegations have put the phase-out provision of the Settlement Agreement "directly at issue" by alleging that Cequent is selling Silent Hitch Pins beyond the permitted phase-out. Cequent Motion at 10-11. Again, Cequent re-writes LGA's allegations to try to make them fit into the arbitration provision.

A review of the SAC shows that the only mention of the phase-out is in ¶ 25 of that pleading. That paragraph merely says that the phase-out was completed. Again, LGA does not need to prove that there was a phase-out of Silent Hitch Pins, or even that the phase-out is complete, to prevail on its infringement claims. It only needs to prove that it owns valid copyrights, trademark rights and patent rights to the Silent Hitch Pins, and that Cequent is using or copying LGA's intellectual property rights. It follows, then, that the phase-out is irrelevant to the claims (except as background), and the dispute over the Silent Hitch Pin does not touch the Settlement Agreement.

In short, the Settlement Agreement and its language excluding future infringing conduct evidence an unambiguous intent that: (a) there were no ongoing contractual covenants (except those expressed in the Settlement Agreement); (b) past conduct and transactions were resolved

via the Settlement Agreement; and (c) future tortious conduct was excluded from the Settlement Agreement. Hence, the arbitration provision is narrow and does not apply here.

**III. Even If The Arbitration Provision Here Is Deemed "Broad," It Does Not Apply Because LGA's Claims Do Not Implicate Issues Requiring Construction of the Settlement Agreement.**

Furthermore, assuming, *arguendo*, that the arbitration provision is construed as "broad," the inquiry does not end as Cequent suggests. As the *Cummings* case quoted above shows, where the arbitration clause is deemed "broad," arbitration will only be ordered "if the claim alleged ***implicates issues of contract construction*** or the parties' rights and obligations under it." *Cummings*, 404 F.3d at 1261 (emphasis added). This requirement has been succinctly summarized by the Arizona Court of Appeals which has held:

> In our opinion, the better-reasoned cases start with the premise that, in order for the dispute to be characterized as arising out of or related to the subject matter of the contract, and thus subject to arbitration, ***it must, at the very least, raise some issue the resolution of which requires a reference to or construction of some portion of the contract itself.***

*Dusold v. Porta-John Corp.*, 807 P.2d 526, 530 (Ariz. App. 1990). That court further noted that "[t]he relationship between the dispute and the contract is not satisfied simply because the dispute would not have arisen absent the existence of a contract between the parties." *Id*. For this reason, even though a provision may be characterized as "broad," courts should not compel arbitration when resolving the claims that are alleged to be arbitrable do not require construction of the underlying agreement. *See Rosen v. Mega Bloks Inc*., 2007 WL 1958968 (S.D.N.Y. 2007) at *9 (despite finding an arbitration provision involving "any dispute arising out of or relating to this Agreement or its breach" was "broad," the Court nonetheless denied arbitration after

determining the plaintiff's lawsuit did not implicate issues of construction of the agreement containing that arbitration provision).

Here, the SAC, on its face, does not implicate *any* issues of construction of the Settlement Agreement containing the arbitration provision. LGA's claims seek remedies for intellectual property right infringement occurring after January 28, 2012, and the Settlement Agreement does not serve as the source of any of the obligations allegedly breached in the SAC. To resolve LGA's claims, neither this Court, nor the jury, need ever look at the Settlement Agreement. It follows that construction of that agreement is not implicated, and consequently, it cannot be said that this dispute arises under or relates to that Agreement. *See Radware, Ltd. v. F5 Networks, Inc.*, 2013 WL 6773799 at * 2 (N.D. Cal. 2013) (noting that when a license agreement explicitly excluded certain types of modes, and the claims did not allege infringement of those modes, the claim is not one "arising out of or related to" the license agreement, and thus was not subject to arbitration) (unreported); *See also* 1 M. Domke, *The Law and Practice on Commercial Arbitration* § 15:6 (rev. ed. 1993) (noting that for a dispute to arise under or relate to the subject matter of a contract, "it must at the very least raise some issue that cannot be resolved without reference to or construction of the contract itself").

The *Rosen* Court reminds "there is a 'presumption' of arbitration, however, [that] does not alter the fact that the ultimate purpose of the Court's inquiry is to determine whether the parties intended that the particular claims at issue here be arbitrated." *Id*. at *8. As one judge of the Tenth Circuit recently observed:

> The question of arbitrability is simply and always a matter of straightforward contract interpretation . . . . When the arbitrability of a particular matter is plain on the face of the parties' agreement, the agreement is enforceable according to its terms – whether the arbitration clause is 'broad' or 'narrow' or somewhere in

12

between (where, if we are to be frank, many clauses will fall). If and to the
degree an agreement contains some residual ambiguity, that's when the . . .
presumption of arbitrability applies – and applies evenhandedly.

*Chelsea*, 567 F.3d at 1201 (J. Gorsuch, concurring). Here, Cequent does not contend there is any ambiguity in the Settlement Agreement (and there is not), and the intent of the parties is expressly limited to arbitrating disputes about the Settlement Agreement and breach thereof, not those matters of future infringing conduct that the parties carved out earlier in the same agreement. This Court does not need to interpret any aspect of the Settlement Agreement to resolve LGA's claims, thus, whether characterized as "narrow" or "broad," the arbitration provision at issue simply does not apply.

## IV. This Court Lacks Power To Compel Arbitration In Another District.

Finally, and as importantly, Cequent's Motion fails as a matter of law because the Tenth Circuit determined nearly a decade ago that "where the parties agree to arbitrate in a particular forum, only a district court in that forum has authority to compel arbitration under §4" of the Federal Arbitration Act. *Ansari v. Qwest Communications Corp*., 414 F.3d 1214, 1219-20 (10th Cir. 2005). Thus, under *Ansari*, §4 of the FAA prohibits this Court from compelling arbitration. Nevertheless this Court has jurisdiction to deny Cequent's Motion, and should do so for reasons stated previously. *See Image Software, Inc. v. Reynolds and Reynolds, Co*., 459 F.3d 1044, 1054-55 (10th Cir. 2006).[4]

---

[4] Although the Tenth Circuit, in *Image*, subsequently clarified that "*Ansari*'s rule is one of venue[,]" *id*. at 1055, the bar against granting such motions still stands, and LGA objects to Cequent's attempt to compel arbitration in Colorado because the parties agreed that "[v]enue for the arbitration proceedings shall be in Chicago, Illinois[.]" Ex. A, Settlement Agreement at 9.

## CONCLUSION

As shown above, the Court's analysis involves three steps, not a single step as Cequent's motion suggests. This Court is required to determine whether the arbitration provision is narrow or broad, and the "arising from or relating to" terminology is not dispositive. Rather, the intent of the parties was to craft a narrow arbitration provision to cover disputes about the Settlement Agreement or a breach thereof. However, even if the Court were to consider the arbitration provision to be "broad," the Court must still determine whether resolution of the claims would require interpretation of the Settlement Agreement that contains the arbitration provision before it can compel arbitration. There is no rational argument that the claims that are alleged in the SAC require this Court or the jury to interpret or apply the Settlement Agreement to resolve disputed issues of fact.[5] Because Cequent's Motion fails both procedurally and substantively, it should be denied.

---

[5] Although Cequent argues in its Motion that it has not waived its rights to challenge the claims under Rule 12 because "at this stage of the litigation, such a challenge is not yet appropriate[,]" Cequent Motion at 6, n.7 (*citing Lamkin v. Morinda Props Weight Parcel LLC*, 440 F. App'x 604 (10th Cir. 2011)), Cequent is wrong here as well. This Court made clear in its Order (Doc. 28) that a motion to compel was not a substitute for an Answer or a Rule 12 motion. Cequent failed to file either within the time allotted by this Court. The *Lamkin* case is neither controlling precedent, nor does change this Court's prior Orders or its standing instructions that the parties must not assume that any motion will be granted. As such, Cequent ignores deadlines set by this Court and the rules at its peril.

DATED this 8th day of October, 2014.

        Respectfully Submitted:

        SILVER & DeBOSKEY,
        A Professional Corporation

        By:    */s/Martin D. Beier*
              Thomas M. Haskins III (#17651)
              Martin D. Beier (#20188)
              Silver & DeBoskey P.C.
              1801 York Street
              Denver, CO 80206
              (303) 399-3000
              haskinst@s-d.com
              beierm@s-d.com

        and

        DENNIS W. HARTLEY, P.C.

        By:    */s/Dennis W. Hartley*
              Dennis W. Hartley (#0788)
              422 E. Vermijo Ave.
              Colorado Springs, CO 80903
              (719) 635-5521
ATTORNEYS FOR PLAINTIFF
LET'S GO AERO, INC.

**CERTIFICATE OF SERVICE**

      I hereby certify that on this 8th day of October, 2014, true and correct copies of the foregoing **PLAINTIFF LET'S GO AERO, INC.'S RESPONSE IN OPPOSITION TO CEQUENT'S MOTION TO COMPEL ARBITRATION [DOC. #29]** was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

David B. Cupar, Esq.
Matthew J. Cavanagh, Esq.
McDonald Hopkins
600 Superior Avenue East, Suite 2100
Cleveland, Ohio 44114
dcupar@mcdonaldhopkins.com
mcavanagh@mcdonaldhopkins.com

                                                  */s/Chris Allen*

ES3403