**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore**

Civil Action No. 14-cv-01600-RM-MEH

LET'S GO AERO, INC., a Colorado corporation,

      Plaintiff,

v.

CEQUENT PERFORMANCE PRODUCTS, INC., a Delaware corporation, f/k/a Cequent
Towing Products, Inc.,

      Defendant.

---

**ORDER**

---

This matter is before the Court on Defendant Cequent Performance Products, Inc.'s

("Cequent") motion to set aside the default entry (ECF No. 42) and its motion to compel

arbitration (ECF No. 29).

For the reasons stated below, the Court GRANTS Defendant's motion to set aside the

default entry and GRANTS, in part, Defendant's motion to compel arbitration.

**I.    RELEVANT BACKGROUND**

    **A.    Factual Background**

In 2008, Defendant and Plaintiff Let's Go Aero, Inc. ("Let's Go Aero" or "LGA")

entered into a license agreement ("License Agreement") that permitted Defendant to sell certain

cargo-management products over which Let's Go Aero claimed to have enforceable intellectual

property rights, including patent rights or pending patents.  (ECF No. 29-1, License Agreement.)

Those products included the:  "Pixie," "Silent Hitch Pin," "Gear Cage," "Gear Deck," "Gear

Space," "Twin Tube," "Juice Box," and "Gear Bed" (collectively, the "Products"). (ECF No. 29-1 at 7, License Agreement at Ex. A.) The Products are vehicle cargo-management products.

In 2010, Defendant filed suit against Plaintiff alleging breaches of the License Agreement (the lawsuit is hereinafter referred to as "LGA I"). (ECF No. 29-2, Compl. in LGA I.) In response, Plaintiff counterclaimed in LGA I and alleged that Defendant's sales of the Products violated Plaintiff's intellectual property rights. (ECF No. 29-3, Am. Countercl. in LGA I.)

In 2012, the parties resolved the LGA I litigation. In resolving the prior dispute, the parties entered into a settlement agreement ("Settlement Agreement"). (ECF No. 29-4, Settlement Agreement[1].) The parties' Settlement Agreement contains an arbitration provision. (ECF No. 29-4 at 10, Settlement Agreement ¶ 23.) The arbitration provision provides the following:

> In the event of any dispute, claim, question, or disagreement arising from or relating to this [Settlement A]greement or the breach thereof, the [p]arties shall use their best efforts to settle the dispute, claim, question, or disagreement. To this effect, they shall consult and negotiate with each other in good faith and, recognizing their mutual interests, attempt to reach a just and equitable solution satisfactory to both parties. If they do not reach such solution within a period of 60 days, then, upon notice by either party to the other, all disputes, claims, questions, or differences shall be finally settled by arbitration administered by the American Arbitration Association in accordance with the provisions of its Commercial Arbitration Rules. Venue for the arbitration proceedings shall be in Chicago, Illinois, and the arbitration shall be conducted by a single neutral arbitrator.

(ECF No. 29-4 at 10, Settlement Agreement ¶ 23.)

---

[1] The Court notes that the Settlement Agreement proffered by Defendant (ECF No. 29-4) is not signed by both parties. (ECF No. 29-4 at 10.) Defendant, however, is the party which did not sign the Settlement Agreement and which proffers the Settlement Agreement. And Plaintiff does not contest the authenticity of the Settlement Agreement. Plaintiff, in response to the motion to compel, attached a document signed by both parties. (ECF No. 38-1.) Plaintiff points the Court to no differences in the documents. Therefore, the Court assumes that the Settlement Agreement proffered by Defendant is authentic because it was Plaintiff's burden to dispute the material facts in response to Defendant's motion to compel. *See Cook v. PenSa, Inc.*, Case No. 13-CV-03282-RM-KMT, 2014 WL 3809409, at *7 (D. Colo. Aug. 1, 2014) (citations omitted) (holding that the District of Colorado "approaches disputes over whether the parties have agreed to arbitrate by applying 'a standard similar to that governing motions for summary judgment.'")

The Settlement Agreement further provides, in pertinent part, that:

(1)     "The [p]arties agree that the previously executed License [Agreement] . . . [is] terminated as of the Effective Date, such that neither [p]arty is indebted, obligated, or liable to the other with respect to any claim, demand, or cause of action arising from facts or circumstances prior to the Effective Date." (ECF No. 29-4 at 3, Settlement Agreement ¶ 1.)

(2)     "Cequent and [Let's Go Aero] each agree that neither [p]arty owes the other [p]arty any money based on the License [Agreement] . . . as of the Effective Date.  Cequent agrees to make a single, up-front payment of $17,500 to [Let's Go Aero] to phase out silent-hitch pins that Cequent has in inventory or on order for commitments with its suppliers or customers as of the Effective Date." (ECF No. 29-4 at 3, Settlement Agreement ¶ 2.)

(3)     "Cequent . . . releases [Let's Go Aero] . . . from any claims, demands, actions or causes of action of every kind and description, which [it] has, had, may have, or may have had against [Let's Go Aero]; including, but not limited to, the claims which Cequent asserted or could have asserted in the [LGA I] as well as any right of action which Cequent may have, whether known or unknown, arising from any act or omission by any [Let's Go Aero] or arising from any fact or circumstance occurring prior to the Effective Date." (ECF No. 29-4 at 4, Settlement Agreement ¶ 4.)

(4)     "[Let's Go Aero] . . .  releases Cequent . . . from any claims [sic] demands, actions or causes of action of every kind and description, which [Let's Go Aero] has, had, may have or may have had against [Cequent]; including, but not limited to, the counterclaims that [Let's Go Aero] asserted or could have asserted in [LGA I] as well as any right of action which [Let's Go Aero] may have, whether known or unknown, arising from any act or omission by

[Cequent] or arising from any fact or circumstance occurring prior to the Effective Date."  (ECF No. 29-4 at 4-5, Settlement Agreement ¶ 5.)

(5)      "The releases in paragraphs 1, 4, and 5 do not (and are not intended to) release or waive any claim, demand, action, or cause of action arising from the unlawful use of the other's intellectual property occurring after the Effective Date."  (ECF No. 29-4 at 5, Settlement Agreement ¶ 6.)

(6)      The "Effective Date" of this [Settlement] Agreement is January 28, 2012."  (ECF No. 29-4 at 2, 9, Settlement Agreement at 1, 8.)

### B.      Procedural Background

In this matter, the operative complaint ("Complaint"), filed on July 31, 2014, alleges that Defendant's sales of certain Products and other conduct violate Plaintiff's rights.  (*See* ECF No. 15.)

On September 17, 2014, Defendant moved to "compel arbitration and to administratively close this case, or in the alternative, to stay proceedings under 9 U.S.C. § 3 pending the outcome of arbitration" ("Motion to Compel Arbitration").  (ECF No. 29 at 1.)  In the Motion to Compel Arbitration, Defendant later asks that the Court grant its motion to compel arbitration and stay the proceedings in this matter.  (ECF No. 29 at 11.)  Defendant moves to compel arbitration on the basis that Plaintiff's claims, in their entirety, are covered by the arbitration provision in the parties' Settlement Agreement.  (ECF No. 29 at 1-2.)  Plaintiff opposes the Court's compelling arbitration.  (ECF No. 38.)  Plaintiff opposes the Motion to Compel Arbitration on the basis that its Complaint "is explicit that the misconduct alleged in this case occurred *after* the parties settled the prior lawsuit on January 28 [sic] 2012."  (ECF No. 38 at 1 (emphasis in original).)  Further, Plaintiff opposes the Motion to Compel Arbitration on the basis that the Court lacks

authority to compel arbitration because the parties agreed to arbitrate in a particular forum, Chicago, Illinois, and only a district court in that forum has authority to compel arbitration. (ECF No. 38 at 13.)

Also on September 17, 2014, Defendant moved to "stay discovery and continue the Court's September 16, 2014, Minute Order (ECF #28), the scheduling obligations by that order, and the October 16, 2014, Scheduling Conference until after the Court decides Cequent's pending motion to compel arbitration (ECF #29)." (ECF No. 30 at 1.) On September 25, 2014, Magistrate Judge Hegarty granted Defendant's motion to stay discovery and pretrial scheduling as follows: "The proceedings of this case are stayed temporarily pending resolution of the Defendant's pending motion to compel arbitration." (ECF No. 33 at 1.)

On October 23, 2014, Plaintiff moved for the entry of default against Defendant for failure to answer or serve another response within the time permitted by the Federal Rules of Civil Procedure or the Court's orders. (ECF No. 40 at 2-3.) On October 24, 2014, the Clerk of the Court entered default against Defendant. (ECF No. 41.) Later on October 24, 2014, Defendant moved to set aside the Clerk of the Court's entry of default. (ECF No. 42.) Plaintiff opposes Defendant's motion to set aside the entry of default. (ECF No. 44.)

On December 12, 2014, Plaintiff notified the Court that a related proceeding involving the same parties and legal issues is presently before the United States District Court for the Northern District of Illinois ("Illinois Action") in which Defendant petitioned that court to compel arbitration. (ECF No. 45 at 1; ECF No. 45-1 at 1.) The Illinois Action, to the Court's knowledge, is presently stayed. (ECF No. 45 at 1.)

## II.    LEGAL STANDARDS

### A.    Setting Aside an Entry of Default

The Court "may set aside an entry of default for good cause. . . ."  Fed. R. Civ. P. 55(c).

The principal factors in determining whether a defendant has met the good cause standard are (1) whether the default was the result of culpable conduct of the defendant; (2) whether the plaintiff would be prejudiced if the default should be set aside; and (3) whether the defendant presents a meritorious defense.  *Pinson v. Equifax Credit Info. Servs., Inc.*, 316 F. App'x 744, 750 (10th Cir. 2009) (unpublished) (citation omitted); *Hunt v. Ford Motor Co.*, 65 F.3d 178 (10th Cir. 1995) (unpublished) (citation omitted).  The Court may consider other factors as well. *Guttman v. Silverberg*, 167 F. App'x 1, 4 (10th Cir. 2005) (unpublished) (citation omitted). Setting aside a default entry is addressed to the sound discretion of the Court.  *Nikwei v. Ross Sch. of Aviation, Inc.*, 822 F.2d 939, 941 (10th Cir. 1987).

The good cause required for setting aside an entry of default "poses a lesser standard for the defaulting party than the excusable neglect which must be shown for relief from judgment under Fed. R. Civ. P. 60(b)."  *Dennis Garberg & Assocs., Inc. v. Pack-Tech Int'l Corp.*, 115 F.3d 767, 775 n.6 (10th Cir. 1997) (citation omitted).  The preferred disposition of any case is upon its merits and not through default.  *See Gomes v. Williams*, 420 F.2d 1364, 1366 (10th Cir. 1970).

### B.    Federal Arbitration Act

Section 4 of the Federal Arbitration Act ("FAA"), in pertinent part, provides that:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action . . . of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4.

Section 3 of the FAA requires a court to stay actions involving matters referable to arbitration:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.

The FAA "manifests a 'liberal federal policy favoring arbitration.'" *Comanche Indian Tribe of Okla. v. 49, L.L.C.*, 391 F.3d 1129, 1131 (10th Cir. 2004) (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991)). "As a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.*" Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

The "question of arbitrability—whether a [contract] creates a duty for the parties to arbitrate the particular grievance—is undeniably an issue for judicial determination. Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *Riley Mfg. Co., Inc. v. Anchor Glass Container Corp.*, 157 F.3d 775, 779 (10th Cir. 1998) (quoting *AT&T Techs., Inc. v. Commc'ns. Workers*, 475 U.S. 643, 649 (1986)). The "existence of an agreement to arbitrate is a threshold matter which must be established before the FAA can be invoked." *Avedon Eng'g, Inc. v. Seatex*, 126 F.3d 1279, 1287 (10th Cir. 1997) (citation omitted). "Before the party may be compelled to arbitrate under the [FAA], the district court must engage in a limited inquiry to determine whether a valid arbitration agreement exists between the parties and *whether the specific dispute falls within the scope of that agreement.*" *Houlihan v. Offerman & Co. Inc.*, 31

F.3d 692, 694-95 (8th Cir. 1994) (emphasis added and citation omitted); *see also Coors Brewing Co. v. Molson Breweries*, 51 F.3d 1511, 1515-16 (10th Cir. 1995).  The language of the contract defines the scope of disputes subject to arbitration.  *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002) (citation omitted).

The Court approaches disputes over whether the parties have agreed to arbitrate by applying "a standard similar to that governing motions for summary judgment."  *Stein v. Burt-Kuni One, LLC*, 396 F. Supp. 2d 1211, 1213 (D. Colo. 2005) (citation omitted); *see also Goodwin v. H.M. Brown  Assocs., Inc.*, Case No. 10-CV-01205-PAB-MEH, 2011 WL 820025, at *3 (D. Colo. Mar. 2, 2011) (collecting cases).  Under this approach, the moving party bears the initial burden of presenting evidence sufficient to demonstrate than an enforceable arbitration agreement exists.  *Stein*, 396 F. Supp. 2d at 1212.  If the moving party satisfies that burden, the burden then shifts to the party opposing arbitration, which must show that there is a "genuine issue of material fact as to the making of the agreement, using evidence comparable to that identified in Fed. R. Civ. P. 56."  *Id*. at 1213.  Finally, the Court must "look to state law principles of contract formation to [determine] whether an agreement to arbitrate has been reached."  *Avedon Eng'g, Inc.*, 126 F.3d at 1287 (citations omitted).

III.   **ANALYSIS**

A.     **Setting Aside the Default Entry**

First, a willful failure to respond constitutes culpable conduct.  *United States .v Timbers Preserve, Rott Cty., Colo.*, 999 F.2d 452, 454 (10th Cir. 1993), abrogated on other grounds as recognized by *United States v. $285,350.00 in United States Currency*, 547 F. App'x 886, 887 (10th Cir. 2013).  Conversely, courts have held that an honest mistake by a defendant does not represent a willful failure to respond.  *E.g.*, *Weiss v. St. Paul Fire & Marine Ins. Co.*, 283 F.3d

790, 794 (6th Cir. 2002) (holding that default judgment may be set aside for "good cause, and upon a showing of mistake, or any other just reason"). Here, Magistrate Judge Hegarty stayed temporarily "[t]he proceedings of this case" pending resolution of Defendant's pending motion to compel arbitration. (ECF No. 33 at 1.) Defendant believed that the proceedings in this case were stayed in its entirety. Plaintiff argues that Defendant had only moved to stay discovery and the scheduling conference order (ECF No. 30). (ECF No. 44 at 3.) Plaintiff's point is well-taken but there is no ambiguity in Magistrate Judge Hegarty's order in which he stayed *the entire* proceedings. If there were any ambiguity as to Magistrate Judge Hegarty's September 25, 2014 order (ECF No. 33), it was incumbent upon the parties to file a motion for clarification.

Second, Defendant acted in good faith. In *Pinson*, the court found that the defaulted party evidenced its good faith when it submitted its motion to set aside the entry of default six days after its entry. *Pinson*, 316 F. App'x at 750. Here, Defendant moved to set aside the entry of default on the day it was entered. This quick response to remedy its mistake does not evidence a desire to delay litigation but, rather, provides further support for Defendant's contention that its failure to respond was an honest mistake. The Court, therefore, concludes that Defendant's failure to answer or otherwise respond to the Complaint via a Rule 12 motion was an honest mistake and Defendant acted in good faith.

Third, the Court finds that the slight delay in case proceedings caused by the failure to answer or respond to the Complaint with a proper Rule 12 motion will not prejudice Plaintiff's ability to prosecute this case.

Fourth, Defendant raises one defense in its motion: that Plaintiff's claims are subject to arbitration. (ECF No. 42 at 2.) As discussed below, the Court finds merit, in part, to this defense.

For these reasons, the Court grants Defendant's motion to set aside the entry of default. Defendant argues that in the Tenth Circuit, "a defendant in a pending lawsuit may file a petition or motion to compel arbitration in lieu of an answer to the complaint." (ECF No. 42 at 2.)  The Court does not find Defendant's argument persuasive as the authority upon which Defendant relies is distinguishable from Defendant's actions in this matter.  In both cases upon which Defendant relies, *Lamkin v. Morinda Props. Weight Parcel, LLC*, 440 F. App'x 604, 606 (10th Cir. 2011) and *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 83 (2000), the defendants moved to compel arbitration or, alternatively, to dismiss the matters.  In this case, Defendant did not move in the alternative to dismiss the matter and thus did not respond to the Complaint. Therefore, the Court grants Defendant seven days leave from the entry of this Order to answer or respond to the Complaint.

### B.     Motion to Compel Arbitration

Both parties advocate an all-or-nothing approach to Defendant's motion to compel this matter's claims.  If only life and the issues raised by Defendant's motion to compel were that simple.  Rather, like life, a more nuanced approach to Defendant's motion to compel is necessary.  That is, the Court must analyze whether each claim "aris[es] from or relat[es] to th[e] [Settlement] Agreement." (ECF No. 29-4 at 10, Settlement Agreement ¶ 23.)  If such claim does—that claim is arbitrable.  If such claim does not—then that claim is non-arbitrable and subject to litigation in the Court.

1.    The Arbitration Clause is Broad as to Claims Arising Out of or Related to the Settlement Agreement[2]

As a threshold matter, the Court must determine whether the parties' arbitration clause is broad or narrow.  The Tenth Circuit Court of Appeals has consistently held that the phrases "arising out of or relating to" mean that the parties intended their arbitration agreement to be construed broadly.  *See, e.g., P&P Indus., Inc. v. Sutter Corp.*, 179 F.3d 861, 871 (10th Cir. 1999).  "Where the arbitration clause is broad, there arises a presumption of arbitrability and arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it."  *Cummings v. FedEx Ground Package Sys., Inc.*, 404 F.3d 1258, 1261 (10th Cir. 2005) (internal quotation and citation omitted).  "[A] collateral issue . . . is somehow connected to the main agreement that contains the arbitration clause."  *Burlington N. & Santa Fe Ry. Co. v. Public Serv. Co. of Okla.*, 636 F.3d 562, 569 (10th Cir. 2010) (internal quotation and citation omitted).   "If the allegations underlying the claims touch matters covered by the parties' [arbitration agreement], then those claims must be arbitrated, whatever the legal labels attached to them."  *Id*. at 570 (quoting *Chelsea Family Pharmacy, PLLC v. Medco Health Solutions, Inc.*, 567 F.3d 1191, 1198 (10th Cir. 2009)).  Where the arbitration clause is broad, however, an express provision excluding a specific dispute, or the "most forceful evidence of a purpose to exclude the claim from arbitration, will remove the dispute from consideration in arbitration."  *AT&T Techs.*, 475 U.S. at 650; *Cummings*, 404 F.3d at 1261 (quotation omitted).

---

[2] Defendant argues that this District has interpreted the "arising out of or relating to" language as covering "issues with any connection to the contract *or to the relationship between the parties*."  (ECF No. 29 at 7 (emphasis added) (citing *GATX Mgmt. Servs., LLC v. Weakland*, 171 F. Supp. 2d 1159, 1163 (D. Colo. 2001).)  The Court cautions Defendant that such an argument is misleading as the arbitration provision at issue in *GATX Management Services*, specifically provided for arbitration for "any and all claims, demands, causes of action, disputes, controversies, and other matters in question arising out of or relating to this [a]greement, any of its provisions, *or the relationship between the parties created by this [a]greement*."  *GATX Mgmt. Servs.*, 171 F. Supp. 2d at 1163 (emphasis added).  Because the arbitration provisions in this matter and *GATX Management Services* are not identical, Defendant's argument is not persuasive to the extent it seeks to compel arbitration as a result of the parties' relationship.

The Tenth Circuit has defined the concept of whether a dispute arises from a contract as follows: "a dispute must either involve rights which to some degree have vested or accrued during the life of the contract and merely ripened after termination, or relate to events which have occurred at least in part while the agreement was still in effect." *Riley Mfg. Co.*, 157 F.3d at 781 (quoting *United Food & Commercial Workers Int'l Union v. Gold Star Sausage Co.*, 897 F.2d 1022, 1024-25 (10th Cir. 1990)).

In this matter, the arbitration clause is broad to the extent *a claim* "aris[es] from or relat[es] to the [Settlement] Agreement." (ECF No. 29-4 at 10, Settlement Agreement ¶ 23.) Thus, the Court must analyze whether each of Plaintiff's claims arises from or relates to the Settlement Agreement.

### 2.   Claim One:  Declaratory Judgment (ECF No. 15 ¶¶ 37-41)

Plaintiff seeks a declaration from the Court that "[t]he conduct of Cequent *from* and after the termination of the License Agreement, in manufacturing, distributing and selling the LGA Inventions and in utilizing LGA Trademarks and LGA Copyrights is wrongful." (ECF No. 15 ¶ 38 (emphasis added).)  The parties terminated the License Agreement as part of their Settlement Agreement.  (ECF No. 29-4 at 3, Settlement Agreement ¶ 1.)  As such, Claim One relates to the termination of the License Agreement and it "arise[s] from or relate[s] to" the Settlement Agreement.  *See Riley Mfg. Co.*, 157 F.3d at 781.   Further, one can define the word "from" as "indicating a cause."  Oxford Am. Dictionary 697 (3d ed. 2010).  Thus, the termination of the License Agreement caused, in part, Defendant's conduct to be wrongful.  Again, such conduct arises from or relates to the Settlement Agreement.  Additionally, Plaintiff seeks a declaration from the Court that "the *continued processing* of the Applications by Cequent was wrongful and in violation of the rights of LGA."  (ECF No. 15 ¶ 41(c) (emphasis added).)  Plaintiff alleges that

"[o]n or about July 1, 2010, July 13, 2010, and December 15, 2010" certain individuals "filed or caused to be filed applications for international and domestic utility patents with the United States Patent and Trademark Office ('USPTO') and the World Intellectual Property Organization ('WIPO')."  (ECF No. 15 ¶ 20.)  Plaintiff also alleges that "[t]hese filings were for a bicycle rack in form and substance identical to the LGA Pixie/SportWing Invention, which had been disclosed to Cequent under the License Agreement."  (ECF No. 15 ¶ 20.)  The filings relate to conduct that occurred at least, in part, while the License Agreement was in effect, and thus, Claim One arises from or relates to the Settlement Agreement.

For these reasons, Claim One is arbitrable.

### 3.   Claim Two:  Unjust Enrichment and Accounting (ECF No. 15 ¶¶ 42-51)

Plaintiff alleges that "Cequent obtained and appreciated benefits *when it retained* the LGA Inventions, LGA Copyrights, LGA Trademarks and Sales Media, mismarking them and then using them to market and sell LGA's products as its own following the January 28, 2012 termination of the License Agreement."  (ECF No. 15 ¶ 44 (emphasis added).)  Plaintiff alleges that "Cequent did not pay for the use of the LGA Inventions, LGA Copyrights, LGA Trademarks and Sales Media following the January 28, 2012 termination of the License Agreement."  (ECF No. 15 ¶ 45.)  Plaintiff alleges that "it would be inequitable and unjust for Cequent *to retain* the benefits LGA has conferred without payment to lGA."  (ECF No. 15 ¶ 46 (emphasis added).)  Plaintiff claims that "Cequent has been unjustly enriched by the manufacture, distribution and sale of LGA Inventions and materials from and after January 28, 2012, *all of which is derived from information disclosed by LGA to Cequent*."  (ECF No. 15 ¶ 47 (emphasis added).)

According to Plaintiff's Complaint, the information disclosed to Cequent occurred on and prior to January 28, 2012.  (ECF No. 15 ¶ 7.)  As such, at least part of the conduct of which

Plaintiff complains concerns actions which occurred while the License Agreement was in effect. Thus, such a complaint is subject to arbitration as the dispute arises from conduct, in part, occurring when the License Agreement was in effect. *See Riley Mfg. Co.*, 157 F.3d at 781. Such conduct is collateral to the Settlement Agreement.

### 4. Claim Three: Civil Conspiracy (ECF No. 15 ¶¶ 52-60)

Plaintiff alleges that "Cequent agreed, combined and conspired with the Applicants to deprive LGA of its rights in the Inventions by *continuing to process the Applications* knowing of their invalidity from and after the termination of the License Agreement, and by selling the LGA Inventions from and after the termination of the License Agreement in violation of LGA's rights therein." (ECF No. 15 ¶ 53 (emphasis added).)   Further, Plaintiff alleges that "Cequent and the [a]pplicants conspired with and aided and abetted each other in continuing to process the Applications for a patent of the LGA Pixie/SportWing based upon the concealment of information which would show the Applications were false, because the bike rack was the direct product of the *knowledge Cequent had acquired from LGA* about the LGA Pixie/SportWing Invention *pursuant to the License Agreement*." (ECF No. 15 ¶ 21 (emphasis added).)

According to Plaintiff's Complaint, the information disclosed to Cequent occurred on and prior to January 28, 2012. (ECF No. 15 ¶ 7.) Further, the applications were begun on July 1, 2010, July 13, 2010, and December 15, 2010 while the License Agreement was in effect. (ECF No. 15 ¶ 20.) As such, at least part of the conduct of which Plaintiff complains concerns actions which occurred while the License Agreement was in effect. Thus, such a complaint is subject to arbitration as the dispute arises from conduct, in part, occurring when the License Agreement was in effect. *See Riley Mfg. Co.*, 157 F.3d at 781. Such conduct is collateral to the Settlement Agreement.

5.      Claim Four:  Intentional Interference with Prospective Economic
         Advantage (ECF No. 15 ¶¶ 61-68)

Plaintiff alleges that "[s]ince January 28, 2012, the date at which the License Agreement

ceased to be effective, LGA had the valid and reasonable expectation that it would derive future

economic benefits from its sales and distribution of LGA Inventions and Sales Media and its use

of LGA Trademarks and LGA Copyrights."  (ECF No. 15 ¶ 63.)  Plaintiff further alleges that

"[f]rom and after the termination of the License Agreement, Cequent used untrue, deceptive or

misleading statements in their advertising and promotion, with the intent to purposely cause

LGA's current or potential customers not to enter into, perform or continue their prospective

business relations with LGA."  (ECF No. 15 ¶ 65.)

According to Plaintiff's Complaint, the conduct at issue concerns interference with

Plaintiff's business subsequent to the termination of the License Agreement.  The parties, in the

Settlement Agreement, excluded disputes concerning conduct which occurred subsequent to the

termination of the License Agreement.  (ECF No. 29-4 at 2, 5, 9, Settlement Agreement at 1, 8, ¶

6.)  Thus, this claim is not subject to arbitration.  *See AT&T Techs.*, 475 U.S. at 650; *see also*

*Cummings*, 404 F.3d at 1261.

6.      Claim Five:  Direct Infringement of Patents (ECF No. 15 ¶¶ 69-76)

Plaintiff alleges that "[s]ince the termination of the License Agreement on January 28,

2012 and to the present, Cequent has and continues to willfully and knowingly manufacture,

make, use, distribute, license, sell and offer for sale, and commercially exploit the LGA

Inventions that embody the patented invention without right and in violation of LGA's rights

therein, all of the foregoing being an unlawful infringement of LGA's rights in the LGA

Inventions relating thereto described in paragraph 9 [of the Complaint]."  (ECF No. 15 ¶ 70.)

Plaintiff alleges that it "owned the LGA Inventions through the period of Cequent's infringing acts and still owns the patents."  (ECF No. 15 ¶ 71.)

According to Plaintiff's Complaint, the conduct at issue concerns patent infringement subsequent to the termination of the License Agreement.  The parties, in the Settlement Agreement, excluded disputes concerning conduct which occurred subsequent to the termination of the License Agreement.  (ECF No. 29-4 at 2, 5, Settlement Agreement at 1, 8, ¶ 6.)  Thus, this claim is not subject to arbitration.  *See AT&T Techs.*, 475 U.S. at 650; *see also Cummings*, 404 F.3d at 1261.

    7. <u>Claim Six:  Inducement to Infringe the Method Patents on the Silent Hitch Pin (ECF No. 15 ¶¶ 77-81)</u>

Plaintiff alleges that Defendant "through the use of LGA's materials, instructed the users to infringe the patents."  (ECF No. 15 ¶ 79.)  Plaintiff alleges that Defendant "knew that the purchaser and user of the Silent Hitch Pin would by that use, infringe the subject patents."  (ECF No. 15 ¶ 80.)

As Plaintiff's Claim Six is without a time limitation, it is unclear whether such conduct occurred prior to or after the effective date of the Settlement Agreement.  Because the arbitration provision in the parties' Settlement Agreement is broad, there exists a presumption in favor of arbitrability.  And thus, the Court finds that Claim Six is arbitrable because it potentially implicates issues of the parties' rights and obligations under the Settlement Agreement.  *See Cummings*, 404 F.3d at 1261.

    8. <u>Claim Seven:  Trademark Infringement (ECF No. 15 ¶¶ 82-89)</u>

Plaintiff alleges that "Cequent has, since January 28, 2012 infringed on LGA's Trademarks by using and displaying them in commerce, without the permission of LGA in advertising and packaging for Cequent's Silent Hitch Pin and GearCage products sold or

supplied to others in violation of LGA's rights in the LGA Trademarks, all to the detriment and damage of LGA." (ECF No. 15 ¶ 85.)

According to Plaintiff's Complaint, the conduct at issue concerns trademark infringement subsequent to the termination of the License Agreement. The parties, in the Settlement Agreement, excluded disputes concerning conduct which occurred subsequent to the termination of the License Agreement. (ECF No. 29-4 at 2, 5, Settlement Agreement at 1, 8, ¶ 6.) (Thus, this claim is not subject to arbitration. *See AT&T Techs.*, 475 U.S. at 650; *see also Cummings*, 404 F.3d at 1261.

9.      Claim Eight:  False Advertising (ECF No. 15 ¶¶ 90-94)

Plaintiff alleges that "Cequent made false and misleading representations of fact in connection with the commercial advertising or promotion of its products in commerce from and after the termination of the License Agreement." (ECF No. 15 ¶ 91.)

According to Plaintiff's Complaint, the conduct at issue concerns false and misleading representations subsequent to the termination of the License Agreement. The parties, in the Settlement Agreement, excluded disputes concerning conduct which occurred subsequent to the termination of the License Agreement. (ECF No. 29-4 at 2, 5, Settlement Agreement at 1, 8, ¶ 6.) Thus, this claim is not subject to arbitration. *See AT&T Techs.*, 475 U.S. at 650; *see also Cummings*, 404 F.3d at 1261.

10.      Claim Nine:  Copyright Infringement (ECF No. 15 ¶¶ 95-99)

Plaintiff alleges that "Cequent has, since January 28, 2012, willfully infringed on, misappropriated, and copied protectable elements of LGA's copyrights, images, and written manuals developed by LGA for its GearCage invention . . . with the intent to commercial exploit these works to which Cequent has no propriety rights." (ECF No. 15 ¶ 97.) Further, Plaintiff

alleges "[f]rom and after the termination of the License Agreement, Cequent has published, distributed and used LGA's copyrighted materials, without the permission of LGA, in advertising and packaging for Cequent's products sold or supplied to others in violation of LGA's rights, all to the detriment and damage of LGA." (ECF No. 15 ¶ 97.)

According to Plaintiff's Complaint, the conduct at issue concerns copyright infringement subsequent to the termination of the License Agreement. The parties, in the Settlement Agreement, excluded disputes concerning conduct which occurred subsequent to the termination of the License Agreement. (ECF No. 29-4 at 2, 5, Settlement Agreement at 1, 8, ¶ 6.) Thus, this claim is not subject to arbitration. *See AT&T Techs.*, 475 U.S. at 650; *see also Cummings*, 404 F.3d at 1261.

11.   Claim Ten:  False Copyright Management Information and Removal of Let's Go Aero's Copyright Management Information (ECF No. 15 ¶¶ 100-102)

Plaintiff alleges that Defendant has "intentionally altered or removed LGA's copyright management information on the user manuals and other materials associated with LGA's patented products." (ECF No. 15 ¶ 100.) Plaintiff further alleges that Defendant has "intentionally provided false Copyright Management Information in connection with LGA's copyrighted materials, including claiming for itself the copyright to the material, all with the intent to deceive and to conceal the infringement, or to enable or facilitate the infringement of LGA's rights." (ECF No. 15 ¶ 101.)

As Plaintiff's Claim Ten is without a time limitation, it is unclear whether such conduct occurred prior to or after the effective date of the Settlement Agreement. Because the arbitration provision in the parties' Settlement Agreement is broad, there exists a presumption in favor of arbitrability. And thus, the Court finds that Claim Ten is arbitrable because it potentially

implicates issues of the parties' rights and obligations under the Settlement Agreement.  *See*

*Cummings*, 404 F.3d at 1261.

        12.     <u>Claim Eleven:  Unfair Competition (ECF No. 15 ¶¶ 103-108)</u>

Plaintiff alleges that Defendant "[f]rom and after the termination of the License

Agreement, . . . copied LGA products and marketed them for sale as its own."  (ECF No. 15 ¶

104.)  Further, Plaintiff alleges that Defendant's "conduct was and is likely to deceive the public

and cause difficulties in distinguishing between LGA's and Cequent's products."  (ECF No. 15 ¶

105.)

According to Plaintiff's Complaint, the conduct at issue concerns unfair competition

subsequent to the termination of the License Agreement.  The parties, in the Settlement

Agreement, excluded disputes concerning conduct which occurred subsequent to the termination

of the License Agreement.  (ECF No. 29-4 at 2, 5, Settlement Agreement at 1, 8, ¶ 6.)  Thus, this

claim is not subject to arbitration.  *See AT&T Techs.*, 475 U.S. at 650; *see also Cummings*, 404

F.3d at 1261.

        13.     <u>Claim Twelve:  Reverse Passing Off (ECF No. 15 ¶¶ 109-113)</u>

Plaintiff alleges "[t]he LGA Inventions marketed, licensed and sold by Cequent from and

after the termination of the License agreement originated with LGA.  Cequent acquired them

pursuant to the License Agreement, but continued and continues to market and/or license the

LGA Inventions for sale under its own name or under other re-sellers' names after the License

terminated."  (ECF No. 15 ¶ 110.)  Further, Plaintiff alleges "Cequent's false designation of the

origin of its products was likely to cause customer confusion."  (ECF No. 15 ¶ 112.)

According to Plaintiff's Complaint, the information disclosed to Cequent occurred on and

prior to January 28, 2012.  (ECF No. 15 ¶ 7.)  As such, at least part of the conduct of which

Plaintiff complains concerns actions which occurred while the License Agreement was in effect. Thus, such a complaint is subject to arbitration as the dispute arises from conduct, in part, occurring when the License Agreement was in effect.  *See Riley Mfg. Co.*, 157 F.3d at 781.  Such conduct is collateral to the Settlement Agreement.

14.   Whether the Court Has Jurisdiction to Compel Arbitration

Section 4 of the FAA provides the Court with jurisdiction to determine whether parties have agreed to arbitrate a dispute.  9 U.S.C. § 4.  The Tenth Circuit, however, has limited the Court's power by holding that "where the parties agree to arbitrate in a particular forum, only a district court in that forum has authority to compel arbitration under [Section] 4 of the FAA. *Ansari v. Qwest Commc'ns Corp.*, 414 F.3d 1214, 1219-20 (10th Cir. 2005).  In this case, the parties' Settlement Agreement provides that arbitration is to take place in Chicago, Illinois (ECF No. 29-4 at 10, Settlement Agreement ¶ 23) which is located within the United States District Court for the Northern District of Illinois.  The Tenth Circuit subsequently clarified that its holding in *Ansari* applies only to venue.  *1mage Software, Inc. v. Reynolds & Reynolds, Co.*, 459 F.3d 1044, 1054-55 (10th Cir. 2006).  Here, Plaintiff objects to Defendant's attempt to compel arbitration.  (ECF No. 38 at 13 n.4.)

Thus, the Court lacks jurisdiction to compel arbitration in Chicago, Illinois.  *1mage Software*, 459 F.3d at 1055.  The Court, however, takes judicial notice, that a related proceeding has been filed in the Northern District of Illinois, *Cequent Performance Products, Inc. v. Let's Go Aero, Inc.*, 1:14-CV-08457, which is currently stayed pending the Court's resolving Defendant's motion to compel.  (ECF No. 45 at 1; ECF No. 45-1.)  The Court will stay the matter as to Claims One, Two, Three, Six, Ten, and Twelve pending *de novo* resolution of the

Illinois Action.  *See Bushman Inv. Prop.s, Ltd. v. DBSI E-470 E. LLC*, Case No. 09-00674-MSK-KLM, 2010 WL 582351, at *3 (D. Colo. Feb. 16, 2010).

15.   <u>Whether to Stay the Entire Litigation Pending Arbitration</u>

Where a court has found that a party's lawsuit contains some claims that raise arbitrable issues and others that do not, the court has considerable discretion with respect to whether it stays the claims that do not raise arbitrable issues or allows them to proceed.  *See Moses H. Cone*, 460 U.S. at 20 n.23 (citations omitted).  The Tenth Circuit has stated that district courts are to consider whether to institute a stay of all claims based upon "whether resolution of [the] arbitrable claims will have a preclusive effect on the nonarbitrable claims that remain subject to litigation and whether the arbitrable issues predominate over the remaining issues.  *Riley Mfg. Co.*, 157 F.3d at 785.  "[T]he mere fact that piecemeal litigation results from the combination of arbitrable and nonarbitrable issues is not reason enough to stay [the] entire case."  *Id*. at 785.

In this case, the parties have yet to brief the issue as to whether arbitration of Claims One, Two, Three, Six, Ten, and Twelve will or will not have a preclusive effect on the remaining claims not subject to arbitration.  Therefore, the Court reserves ruling on the request to stay the matter in its entirety.  The Court orders the parties to file cross briefs within thirty (30) days of this Order as to whether a stay is appropriate as to individual Claims Four, Five, Seven, Eight, Nine, and Eleven.

## IV.   CONCLUSION

Based on the foregoing, the Court:

(1)   GRANTS Defendant's motion to set aside the Clerk's entry of default (ECF No. 42), to wit, the Court ORDERS the Clerk of the Court to set aside the entry of default (ECF No. 41);

(2)    GRANTS Defendant seven (7) days leave to answer or otherwise respond to the Complaint (ECF No. 15);

(3)    GRANTS, in part, Defendant's motion to compel arbitration (ECF No. 29), to wit, the Court finds the following claims are subject to the parties' arbitration agreement (ECF No. 29-4):

> (i)    Claim One (ECF No. 15 ¶¶ 37-41);
>
> (ii)    Claim Two (ECF No. 15 ¶¶ 42-51);
>
> (iii)    Claim Three (ECF No. 15 ¶¶ 52-60);
>
> (iv)    Claim Six (ECF No. 15 ¶¶ 77-81);
>
> (v)    Claim Ten (ECF No. 15 ¶¶ 100-102); and
>
> (vi)    Claim Twelve (ECF No. 15 ¶¶ 109-113)

(4)    DENIES, in part, Defendant's motion to compel arbitration (ECF No. 29), to wit, the Court lacks jurisdiction in which to compel the parties to arbitrate Claims One, Two, Three, Six, Ten, and Twelve in Plaintiff's Second Amended Complaint (ECF No. 15); and

(5)    GRANTS, in part, Defendant's request to stay proceedings (ECF No. 29), to wit the matter will be stayed as to:

> (i)    Claim One (ECF No. 15 ¶¶ 37-41);
>
> (ii)    Claim Two (ECF No. 15 ¶¶ 42-51);
>
> (iii)    Claim Three (ECF No. 15 ¶¶ 52-60);
>
> (iv)    Claim Six (ECF No. 15 ¶¶ 77-81);
>
> (v)    Claim Ten (ECF No. 15 ¶¶ 100-102); and
>
> (vi)    Claim Twelve (ECF No. 15 ¶¶ 109-113) pending resolution of the Illinois Action; and

(6)     RESERVES ruling, in part, Defendant's request to stay proceedings (ECF No. 29), to wit the Court ORDERS the parties to file cross briefs within thirty (30) days of this Order as to whether a stay is appropriate to the following individual claims:

(i)     Claim Four (ECF No. 15 ¶¶ 61-68);

(ii)    Claim Five (ECF No. 15 ¶¶ 69-76);

(iii)   Claim Seven (ECF No. 15 ¶¶ 82-89);

(iv)    Claim Eight (ECF No. 15 ¶¶ 90-94);

(v)     Claim Nine (ECF No. 15 ¶¶ 95-99); and

(vi)    Claim Eleven (ECF No. 15 ¶¶ 103-108).

DATED this 28th day of January, 2015.

BY THE COURT:

RAYMOND P. MOORE
United States District Judge